[Crim. No. 213. Department Two.—September 4, 1897.]

THE PEOPLE, Respondent, v. JOHN W. MAXWELL, Ap-
pellant.

CRIMINAL LAW—PERJURY—FALSE OATH IN INSOLVENCY.—Under section 124 of
the Penal Code, the crime of perjury, in making a false oath to a
petition and schedules in insolvency, is completed when, at the in-
stance of the defendant, the papers are filed in court; and an infor-
mation therefor should allege the falsity of the oath as of that time.
ID.—INSUFFICIENT EVIDENCE OF OFFENSE.—Under section 1968 of the Code of
Civil Procedure, requiring as indispensable evidence to a conviction
of perjury the testimony of two witnesses, or of one witness and
corroborating circumstances, an insolvent debtor, accused of perjury
in falsely swearing to a schedule of assets which omitted a particular
promissory note, cannot be convicted upon mere evidence of his own-
ership of the note some months prior to the filing of his petition in
insolvency, of his subsequent possession thereof, and of his admis-
sion to sundry persons that he had money or resources with which
to pay his debts.

APPEAL from a judgment of the Superior Court of Napa
County and from an order refusing a new trial. E. D. Ham,
Judge.

The facts are stated in the opinion of the court.

Dinkelspiel & Gesford, and E. L. Webber, for Appellant.

W. F. Fitzgerald, Attorney General, Henry E. Carter, and Charles H. Jackson, Deputies Attorney General, for Respondent.

THE COURT.—Defendant, convicted of the crime of perjury, appeals from the judgment, from the order denying his motion in arrest of judgment, and from the order denying his motion for a new trial.

The perjury charged was a false oath made by defendant as to matters contained in his petition and schedules in insolvency.

It is first insisted that the information is defective and fails to charge the crime in this, that it is alleged that at the time defendant filed his petition and schedules in insolvency he was the owner of a note referred to in the information and alleged to have been omitted from the schedules, but no charge is made that at the time defendant took the oath he was the owner of the note, and it is insisted that the falsity of the oath must be determined by the state of facts existing at the time the oath was taken, and not at the time when the petition was filed. The petition and schedules bear date May 20, 1895, and were filed in the superior court of Napa county upon that date. Appellant's contention is completely disposed of by the provisions of section 124 of the Penal Code: "The making of a deposition or certificate is deemed to be complete, within the provisions of this chapter, from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true." In this case the offense was completed when at the instance of defendant the papers were filed in the court. (See *People v. Robles*, 117 Cal. 681.)

It is further insisted upon the part of appellant that the evidence is insufficient to sustain the verdict and judgment; that the conviction was had upon circumstantial evidence alone, and that there was an absence of the positive testimony of two witnesses, or of one witness and corroborating circumstances, required by the law before conviction in such a case as this can be had. (Code Civ. Proc., sec. 1968; *People v. Wells*, 103 Cal. 631; *People v. Porter*, 104 Cal. 415.)

The evidence upon the part of the people showed that some months prior to the date of filing the petition defendant was the

owner of a promissory note for sixteen hundred dollars made to him by George W. Reid, Archie McKenzie and George S. McKenzie. Three or four hundred dollars had been paid upon the note before the petition was filed. This note was not included by the insolvent amongst his assets; and it became incumbent upon the prosecution to show that at the date of the filing of the petition and schedules in insolvency the defendant was in fact the owner thereof.

Reid, one of the makers of the note, testified for the prosecution that after May 20, 1895, he paid moneys to one R. K. Thompson on this note, and took Thompson's receipt therefor. The receipts were in evidence. About four months after the petition was filed by defendant he and Reid met and a new note was executed by Reid for the unpaid balance of the old note, and the latter was destroyed. The new note was made payable to defendant, and was signed by Reid and one Smeltzer, but not by the McKenzies. Reid, asked on cross-examination why he made the payments to Thompson, answered, because he held the note; and he further stated that Thompson held it prior to May 20, 1895. He also testified that he saw an assignment written on the back of the note by Maxwell to Thompson; that Maxwell owed Thompson something, as he understood it, and indorsed the note to Maxwell to secure him. This was before the petition was filed.

The further evidence in the case consists of testimony as to admissions made by defendant after the petition was filed. That evidence may be thus summarized: Welti, a creditor of defendant, testified that defendant, the day after the petition was filed, showed him the note in question, and said he had money enough to pay all his debts from money coming on the note. He did not look to see if it was indorsed; did not know its date of payment, saving that defendant told him it would not be due for a month or two. He remembered that the note was for sixteen hundred dollars, and was payable to John Maxwell. Stoddard, another creditor, testified that the day after defendant filed his petition he stated to the witness that he had means to pay what he owed him, and would pay him. He further testified that a day or two before defendant filed his petition defendant stated to witness that he, defendant, could take back the stable (for the purchase of which the note had been given), by giving up the security that

he had for the stable, and that he could not pay witness, as Reid was not paying for the stable according to agreement. George S. McKenzie testified that he demanded the note as assignee in insolvency from defendant, and defendant told him the note belonged to Mr. Thompson before he went into insolvency, and that it was partly paid before he had assigned it to Thompson. Gable testified that in August, 1895, he asked defendant to lend him one hundred and fifty dollars and defendant told him he had the money, but would have to get an order from Bob Thompson for it. Witness did not state what Bob Thompson defendant referred to.

It is at once apparent that there is not here the testimony of two witnesses bearing evidence to the corpus delicti, nor yet the direct evidence of one witness supported by corroborating circumstances. The evidence is all in its nature circumstantial. The utmost effect that can be given to the admissions of the defendant, testified to by the witnesses, is that after the date of the alleged perjury he had the promissory note in his possession (with the presumption of ownership attaching thereto), and that he stated to sundry persons that he had money or resources with which to pay his debts.

Section 1968 of our Code of Civil Procedure, requiring as indispensable evidence to a conviction of perjury the testimony of two witnesses or of one witness and corroborating circumstances, is a statutory enactment of the rule which prevailed at common law. It may be argued with much force that in adopting this rule it was adopted in the light of the decisions of the common-law courts in interpretation of it. From the eminence of the tribunal which has declared it, one of those decisions entitled to the utmost respect is that of the supreme court of the United States in *United States v. Wood*, 14 Pet. 430. That decision was handed down in 1840, and the contention that the rule of common law enacted in our code is to be interpreted by its light is entitled to much weight. The defendant was there indicted under the revenue collection laws for the crime of perjury, alleged to have been committed in falsely swearing to the purchase price of certain goods imported by him. There was an absence of the testimony of living witnesses to the offense. Its place was supplied by the books of defendant and by his letters and cor-

respondence with his father, an English merchant, from whom the purchases were made. By these it was made to appear that he had entered into a conspiracy with his father to defraud the government of the United States by false invoices and returns, and that the price in fact paid by him for the goods was much greater than that to which he had sworn. After elaborate consideration of the question, the court thus sums up the matter: "In what case, then, will the rule not apply? Or in what cases may a living witness to the corpus delicti of a defendant be dispensed with, and documentary or written testimony be relied upon to convict? We answer, to all such where a person is charged with a perjury, directly disproved by documentary or written testimony springing from himself, with circumstances showing the corrupt intent. In cases where the perjury charged is contradicted by a public record, proved to have been well known to the defendant when he took the oath; the oath only being proved to have been taken. In cases where a party is charged with taking an oath contrary to what he must necessarily have known to be the truth, and the false swearing can be proved by his own letters relating to the fact sworn to, or by other written testimony existing and being found in the possession of a defendant, and which has been treated by him as containing the evidence of the fact recited in it."

We do not stop here to decide whether the rule as thus interpreted should govern this court in its construction of section 1968 of the Code of Civil Procedure, for the evidence in this case by no means comes up to that rule. Of positive testimony there is none, nor is there any documentary or written evidence by which its place may be supplied. Even if the parol admissions of a defendant covering directly the matter charged could under any circumstances be held sufficient, as a substitute for the required documents, the evidence here introduced falls far short even of that. The admissions do not go directly to the matter charged, but to collateral matters from which the jury was asked to draw the inference of guilt.

The evidence in this regard being wholly insufficient, for this reason the judgment and order are reversed and the cause remanded.