[Crim. No. 674.   Third Appellate District.—June 25, 1923.]

## THE PEOPLE, Respondent, v. KENNETH BURCHAM, Appellant.

[1] CRIMINAL LAW—PERJURY — VERDICT — INSUFFICIENT EVIDENCE.—
In this prosecution for perjury under an indictment which was
in three counts, the evidence, measured by the requirements of
section 1103a of the Penal Code that "perjury must be proven by
the testimony of two witnesses, or of one witness and corrob-
orating circumstances," was wholly insufficient to support the
verdict of guilty as to any count.

[2] ID.—SEVERAL WITNESSES—ABSENCE OF CORROBORATION.—One of
the counts of the indictment charging perjury having been based
upon the testimony of the defendant in a previous trial to the
effect that on a certain day he made certain purchases in a given
store, the testimony of the clerks and the proprietors of such
store to the effect that they had no recollection of making such
sales to defendant on the day mentioned must, within the meaning
of section 1103a of the Penal Code, be regarded as one witness,
where the testimony of any one of said witnesses was not corrob-
orative of the testimony of any other.

APPEAL from a judgment of the Superior Court of
Humboldt County.   Denver Sevier, Judge.   Reversed.

The facts are stated in the opinion of the court.

Metzler & Mitchell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged by an indictment
found and returned by the grand jury of Humboldt County
with the crime of perjury and was subsequently tried on
said indictment in the superior court of said county.   The
indictment was in three counts and the jury found him
guilty on each count.

He appeals from the judgment and the order·denying him
a new trial.

---

1.   Number of witnesses and corroborative evidence necessary to
support conviction for perjury, note, 6 **Ann. Cas.** 812.

The indictment charges that the alleged perjury was committed by the defendant as a witness in a criminal action tried in the superior court of Humboldt County and in which one Lawrence Mahach and Marion Rube were charged with the crime of robbery committed in said county on the third day of May, 1922.

It appears that in the forenoon of Wednesday, the third day of May, 1922, and during business hours, the Bank of Fortuna, situated in the town of Fortuna, in Humboldt County, was entered by a bandit and in the presence of Fred P. Newell, an officer of said bank, said bandit forcibly took from said bank the sum of $18,000. About the time that the robbery was being perpetrated a young man, a student of the high school of Fortuna, was approaching the bank, having been sent there to procure some change for the principal of the school. He saw an Oldsmobile car standing in front of the bank. As he neared the car a man emerged from the bank carrying with both hands a large sack which appeared to be filled with some article that was heavy and cumbersome. This man stepped to the front of the car and threw the sack in the front part thereof or in front of the seat next to which the driver sits when operating an automobile. This young man stated that, although the curtains of the car were drawn, he was able to observe at least one and he thought two men sitting in the back of the car. Immediately upon throwing the sack into the car, the party jumped in and started the machine at a rapid rate around the corner of the street and the car disappeared from sight. Within a short time thereafter several of the employees of the bank rushed out to the sidewalk and exclaimed that the bank had been robbed. At the trial of Mahach and Rube the young man testified to these circumstances and also stated that, although the face of the man who carried the sack from the bank to the automobile was thickly covered with what seemed to him to be white powder and rouge, he was, nevertheless, able to and did positively identify Rube as that party. Subsequently to the commission of the robbery, said Lawrence Mahach and Marion Rube were arrested and charged with the commission of said robbery.

On the twenty-ninth day of April, 1922, one O. J. Pidgeon, the owner of a garage in the city of Eureka, Hum-

boldt County, just before the hour of 8 o'clock P. M., parked his Oldsmobile car in front of the Elks Building in said city and thereupon went to the Elks Hall to attend a meeting of the lodge and a banquet to be later given that evening under the auspices of said organization. When he returned from the Elks Hall to the sidewalk where he had parked his machine he found that it was missing. On the 30th of April, in the forenoon, a machine, which bore the description of Pidgeon's Oldsmobile, was seen traveling at a rapid rate of speed over a road leading from the town of Pepperwood, which is about thirty miles from the city of Eureka, and going in the direction of the town of Scotia, in Humboldt County. Later in the day an Oldsmobile of the same description was seen parked in the woods near Pepperwood about one hundred yards from the highway. No one was seen about the car at the time and the engine was "dead." Parties going through the woods and who had seen the car earlier on the 30th of April again passed the same spot later in the day and observed that the machine had been taken away.

On Thursday following the day of the robbery Pidgeon recovered his car, it having been left in the town of Fortuna, where the robbery occurred. The car had been roughly used. It was covered with dust and dirt and the insulation had burned out and the machine could not be operated without the repair of the insulation and other parts of the machinery thereof.

The description of the Oldsmobile seen in the woods near Pepperwood and the car seen by the young man near the Fortuna Bank at the time of the robbery and into which Rube threw the sack tallied with that of the Oldsmobile stolen from Pidgeon.

The theory of the prosecution was, and the people directed their proof to the support of that theory in said case of *People* v. *Mahach and Rube,* 60 Cal. App. 635 [213 Pac. 539], that the said parties stole the machine of Pidgeon and that they used the car for the purpose of carrying out the scheme which evidently they had conceived to rob the Bank of Fortuna. The evidence presented by the people disclosed circumstances from which the jury could well have concluded that said theory was well founded.

The defendant in this case testified as a witness for the defendant Rube. He stated that he met Rube in Eureka near 7 o'clock in the evening of Saturday, April 29, 1922, Rube having a short time before arrived in Eureka on the stage from Crescent City, Del Norte County; that in a conversation with Rube the latter said to him that he had been working "up north" and that he was anxious to return to his home; that the defendant asked where his home was and Rube stated it was at Pepperwood. a distance of about twenty-five or thirty miles from Eureka; that Rube stated to him that he was short of money and that he did not like to be required to hire a car to take him home; that thereupon the witness said: "Well, I have a friend here, if I can see him, I oftentimes use his car. I will take you home, because I had never been down that way, I had only been over here a short time. Anyway I told him if he would pay the oil and gas and that sort of thing, and in case we had any tire trouble, I would take him home where he wanted to go." The defendant stated that he immediately started out to borrow the car from the friend to whom he had referred in his conversation with Rube and promised to meet him (Rube) within an hour in case he succeeded in securing the loan of the car; that he did secure the car and near the hour of 8 o'clock P. M., met Rube and drove him to his home at Pepperwood. Before leaving for Pepperwood, however, Rube stated to Burcham, so the latter testified, that he (Rube) desired to purchase some sugar and cornmeal to take home with him; that thereupon he (Burcham) drove the machine to the store of Hinch, Salmon & Walsh in Eureka; that Rube gave him $20 and asked him to go into the store and purchase three sacks of brown sugar and some cornmeal; that he (Burcham) entered the store and purchased the articles named, returned to the car and then proceeded on his way to Pepperwood; that, arriving at Pepperwood, Rube went to his home and he (Burcham) returned to Eureka.

In reply to questions by the district attorney on cross-examination, the defendant stated that the name of the man from whom he borrowed the car was E. L. Hartwell; that it was a Dodge automobile; that he and said Hartwell served together as soldiers in the war with Germany and were in Europe together during said war. He was asked

where Hartwell resided at the time that he got the car and he replied that he was not certain, but believed that he stopped at a lodging-house known as the Metropole in the city of Eureka. He was then asked these questions and returned the answers which follow them: "Q. Where is he [Hartwell] now? A. I could not say that. Q. How long did he remain in the county after that night? A. As much as a month. Q. Where did he stay during that time? A. I am not sure but I think he stayed at the Metropole."

Further cross-examining Burcham the district attorney asked him what his (defendant's) business was, to which he replied that he had worked at different kinds of labor in different places. Further questions by the district attorney on this line and answers by Burcham are as follows: "Q. What have you labored at since you have been in this county? A. Well, I tended bar awhile and worked in a gravel pit. Q. Where did you tend bar? A. At the Wave for about three months. [The Wave was the name of a soft-drink establishment conducted in Eureka at the times mentioned by the witness.] Q. When did you commence tending bar there? A. In March. Q. How long did you continue? A. Up until I guess the middle of July—no, I mean June. Q. What were your hours of work? A. 12 to 2 and 6 until 12. Q. From noon until 2 in the afternoon? A. Yes, sir. Q. And then after that from 6? A. Yes, sir, from 6 until 12 at night. Q. Were you on duty that night? A. No, sir. Q. Why were you not working that night? A. Well, I worked five or six weeks steady, and I wanted a night off. I had three nights off, not only that one."

It is upon the testimony above recited that the three counts of the indictment are predicated. The first was based upon the defendant's testimony that one E. L. Hartwell lived and was in Eureka on the twenty-ninth day of April, 1922; the second upon Burcham's testimony as to his alleged employment as a bartender in the Wave soft-drink saloon from the month of March to the month of June, 1922, and the third upon his testimony that he purchased sugar and cornmeal for the said Rube at the store of Hinch, Salmon & Walsh on the evening of said April 29th.

It is obvious that the object of the testimony of Burcham that he took Rube from Eureka to Pepperwood on the twenty-ninth day of April, 1922, leaving the former place

near the hour of 8 P. M., was to overcome the effect of the evidence introduced by the prosecution tending to support the theory that Rube and his confederate stole the Oldsmobile car of Pidgeon at Eureka on said night and used said car in the furtherance of their scheme to rob the Bank of Fortuna.

[1] It is not necessary to consider and determine herein whether the testimony referred to in each of the counts was as to "a matter material to the issue" in the case of *People* v. *Mahach and Rube,* since we are of the opinion that the contention that the evidence is insufficient to support the verdict is well taken as to all the counts. Referring now to count 1, an examination of the record has convinced us that there is no testimony to show that there was no such person as E. L. Hartwell residing in the city of Eureka on the twenty-ninth day of April, 1922. There is some evidence in the record that the defendant Burcham at one time resided in the town of Redding; that there at the same time lived in or about said town a man by the name of E. L. Campbell, who was also known as E. L. Hartwell; that said Hartwell met his death in an accident that occurred near Redding some six or eight months prior to the time at which the robbery of the Fortuna Bank took place. There is also some testimony that the defendant was an acquaintance of said Campbell or Hartwell and that the latter, while living in Redding, owned a Dodge automobile. There was no testimony showing or tending to show that a man by the name of E. L. Hartwell did not live or reside in the city of Eureka on the twenty-ninth day of April, 1922, or that a man of that name had not resided there for several months prior to and down to and including said date. In other words, for aught that the record discloses, there might have been such a man residing in said city at the times material to this inquiry. Section 1103a of the Penal Code declares that "perjury must be proven by the testimony of two witnesses, or of one witness and corroborating circumstances." The testimony introduced for the purpose of establishing the charge of perjury set forth in the first count of the indictment falls far short of meeting the requirements of said section of the Penal Code. Indeed, to uphold a conviction of the defendant upon the charge that he perjured himself in testifying that E. L.

Hartwell lived or was in Eureka on the twenty-ninth day of April, 1922, it would be necessary to rely wholly upon the testimony that a man sometimes known as E. L. Hartwell lived in Redding, that he owned a Dodge automobile and that the defendant was acquainted with him. This, in effect, would amount to no more than predicating the conviction of the accused upon the presumption of "identity of person from identity of name." (Sec. 1963, subd. 25, Code Civ. Proc.)

As to the defendant's alleged false testimony as to his employment in the Wave saloon from May to June, 1922, and which constitutes the foundation for the charge of perjury contained in the second count of the indictment, it is clear that, unless the purpose of the inquiry as to his said alleged employment was to show that he was not in Eureka on the twenty-ninth day of April, 1922, his testimony as to such employment, as well as that of the people tending to prove that his statement that he was so employed during the period mentioned was false was wholly immaterial to any issue in the case of the *People* v. *Mahach and Rube.* We can conceive of no other theory upon which said testimony may be held to have been material in said case. But, conceding that the purpose of the inquiry as to his employment during said period was founded upon that theory, and that it was, therefore, pertinent and material, still an examination of the evidence has convinced us that the charge of perjury based upon said testimony is not sustained or supported by that degree or *quantum* of proof required by the statute. It is not necessary to enter herein into an analytical review of the testimony to verify this conclusion. It is enough to say that the proprietor of the Wave saloon, as well as other witnesses, testified that, during the months mentioned, the defendant did at times work in said saloon. In fact, the proprietor himself, a witness for the people, testified that he did work in the said saloon at different shifts in the months of April and May, 1922. (Trans., p. 152.) There is no testimony contradicting this testimony, nor, indeed, any testimony that he did not at intervals work in said saloon up to the twenty-ninth day of April, 1922.

As to the third count, the testimony presented in support thereof comes entirely from the sales clerk and the owners

of the store of Hinch, Salmon & Walsh. Their testimony amounted merely to this: That some of them could not recall that the purchase claimed to have been made by the defendant at said store was made on the evening referred to; that, while one or two of the clerks had at different times seen the defendant in said store, none could recall that he had seen him therein on the evening of the said twenty-ninth of April; that none of them remembered having sold the defendant on said evening three sacks of sugar and some cornmeal, or having sold him any articles of merchandise on said evening; that maintained in the store was an International cash register containing one main drawer and eight subsidiary drawers; that each of the subsidiary drawers was assigned for use to a different sales clerk; that the register tape always showed each separate sale and the amount thereof in money and also indicated a total of all sales; that goods in large bulk were kept in the warehouse adjoining the store and that where sales of such goods were made they were customarily delivered directly from the warehouse and not taken through the main store for delivery. The tape of the register for the twenty-ninth day of April, 1922, was introduced in evidence and it showed no such sale as the defendant claimed was made to him on said day. All of these witnesses admitted that a sale might be made and the clerk making it inadvertently omit to record it on the register. The tape of said day contained some figures which were so "blotched" that it was impossible to decipher them or tell whether they represented one, two or four figures. One of the proprietors of the store, though, thought or "estimated" that the sale represented by the "blotched" figures was made some hours on the 29th of April prior to the time of day at which the defendant testified that he purchased the sugar and cornmeal.

The above is practically all the showing that the people made in support of count three of the indictment. **[2]** All the witnesses (clerks in the store and the proprietors) testifying that they had no recollection of selling the defendant the sugar and cornmeal on the day mentioned must, within the meaning of section 1103a of the Penal Code, be regarded as one witness. In other words, the testimony of any one of said witnesses was not corroborative of the testimony of any other. Assuming, therefore, that any one witness of

the said witnesses testified to any fact or facts which would tend to show that the defendant's testimony as to said purchase was false, the only circumstance which may be said to have been corroborative thereof was the tape register. It is extremely doubtful, from the condition said tape was shown to be in as to blotched figures, and the likelihood at times (perhaps at a late hour of the day, when the goods sold were in a warehouse and not in the main store) of a failure by a clerk to "ring up" a sale, whether the tape would afford a sufficient corroborating circumstance in this case to square with the requirements of section 1103a of the Penal Code. On the other hand, assuming that the tape register showing no such sale on the day named constituted a "corroborating circumstance" sufficient to meet the requirement of the statute in a case where there is testimony of one witness tending to show perjury, was the testimony of any of the witnesses (the sales clerk and the owners of the store) such as to show that the said crime had been committed? We think not. The testimony of the clerks and the store owners was not positive as to the fact to which they testified. None of it involved a square, unqualified statement that the defendant did not make the purchase referred to. To the contrary, it was based more upon the probabilities of the situation following from the customary method of transacting business in said store. And, as further detracting from its probative value, was the admission by the witnesses that such a sale might have been made and no record made of it on the cash register.

No man's liberty should be taken from him upon such a flimsy showing as characterizes the evidentiary features of this case.

The judgment and the order are reversed.

Burnett, J., and Finch, P. J., concurred.