[Crim. No. 812. Third Appellate District.—November 14, 1924.]

# THE PEOPLE, Respondent, v. KENNETH BURCHAM, Appellant.

[1] CRIMINAL LAW—RETRIAL ON CHARGE OF PERJURY—DISMISSAL OF ACTION AFTER REVERSAL OF JUDGMENT—PLEA OF ONCE IN JEOPARDY.—A defendant, who is on retrial for a charge of perjury, is not entitled to have his plea of once in jeopardy sustained where the judgment of conviction had on the first trial was reversed and, after the *remittitur* was filed in the trial court, the action was dismissed on motion of the defendant.

[2] ID.—PERJURY—EXISTENCE OF NAMED INDIVIDUAL—EVIDENCE.—In a prosecution for perjury, where the defendant had given testimony in another case that on a given date he borrowed an automobile at a named city from an individual of the name of "Elmer L. Hartwell," and the prosecution introduced evidence tending to show that no person known as "Elmer L." or "E. L. Hartwell" resided in said city after the death of a person who had adopted the name "Elmer L. Hartwell' and whose death occurred before the date on which defendant testified he borrowed said automobile, a receipt and orders for goods signed "E. L. Hartwell," and bearing dates at said city which were after the death of the person who had adopted the name of "Hartwell" and before the date on which the automobile was borrowed, if properly identified as having been received in the ordinary course of business, were admissible in rebuttal of the evidence introduced by the prosecution.

[3] ID. — CIRCUMSTANTIAL EVIDENCE — INSUFFICIENCY OF. — In such prosecution, if it be conceded that the evidence (which is wholly circumstantial) tending to prove the falsity of the testimony alleged to have been given by the defendant creates a strong probability of the defendant's guilt, or even that it constitutes proof beyond a reasonable doubt thereof, it falls short of the character of proof required to establish a charge of perjury.

---

(1) 16 C. J., p. 262, sec. 437.   (2) 30 Cyc., p. 1448.   (3) 30 Cyc., p. 1453.

1. See 8 R. C. L. 142; 7 Cal. Jur. 947–949.

3. Conviction for perjury on circumstantial evidence, notes, 15 A. L. R. 634; 27 A. L. R. 857.

Establishment of falsity of testimony by circumstantial evidence in prosecution for perjury, note, 44 L. R. A. (N. S.) 513.

Number of witnesses and corroborative evidence necessary to support conviction for perjury, note, 6 Ann. Cas. 812. See, also, 21 R. C. L. 272; 20 Cal. Jur. 1021.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. Denver Sevier, Judge. Reversed.

The facts are stated in the opinion of the court.

Metzler & Mitchell for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The defendant was convicted of the crime of perjury and prosecutes this appeal from the judgment of conviction and the order denying his motion for a new trial.

The alleged perjury is charged to have been committed during the trial of *People* v. *Mahach and Rube,* 60 Cal. App. 635 [213 Pac. 539]. The defendant was convicted of perjury in giving some of the testimony herein alleged to be false, prior to the commencement of this action. The judgment in that case was reversed. (*People* v. *Burcham,* 62 Cal. App. 649 [217 Pac. 558].) The opinion therein contains a comprehensive statement of the facts which show the materiality of the alleged false testimony charged in that action and in this, and no general restatement of such facts is necessary here. [1] After the *remittitur* was filed in the trial court the action was dismissed on motion of the defendant. Thereafter this action was commenced. The defendant pleaded that he was "once in jeopardy," basing the plea upon his trial and conviction in the case which was reversed and thereafter dismissed. There is no merit in the plea. (*People* v. *Schmidt,* 64 Cal. 260 [30 Pac. 814]; *People* v. *Mooney,* 132 Cal. 13 [63 Pac. 1070]; *People* v. *Disperati,* 11 Cal. App. 469 [105 Pac. 617].)

The information herein charges, among other things, that in the trial of the case of *People* v. *Mahach* it "became and was material to know . . . whether or not a person known as Elmer L. Hartwell was in the city of Eureka . . . on April 29th, 1922, and on that day was the owner of and had possession of a certain Dodge automobile and on said day . . . loaned said Dodge automobile to said

Kenneth Burcham, which said automobile was on said 29th day of April, 1922, used and employed by said Kenneth Burcham to convey and transport one Marion Rube from Eureka . . . to a point on the state highway about five miles beyond Scotia in said county and state." It is then alleged, in appropriate language, that the defendant gave certain testimony, which is set out by question and answer and which covers six pages of the transcript, and that all such testimony was "false and untrue, and was known by said defendant to be false and untrue at the time the same was so given." The information contains a second count which in all respects is the same as the first, except as to the materiality of the testimony given and, in that respect, it is alleged that it "became and was material to know . . . whether or not a person known by the name of Elmer L. Hartwell was alive and in the city of Eureka . . . on the 29th day of April, 1922, and talked to and conversed with said Kenneth Burcham about the loan of a certain Dodge automobile, then owned by and in the possession of said Elmer L. Hartwell."

The testimony set out in the information and alleged to be false is too long to quote, but in substance it is averred that at about 8 o'clock in the evening, on the 29th of April, 1922, the defendant borrowed a Dodge touring car, 1921 model, from one Elmer L. Hartwell and in it took Rube from Eureka to a point about thirty miles south thereof and about five miles south of Scotia; that he then returned alone and placed the automobile in a garage at Third and D Streets, where Hartwell had told him to leave it; that he had theretofore seen the license on the car and that it was registered in Hartwell's name (but it is not alleged that defendant testified in what state the automobile was registered); that he did not know any of Hartwell's relatives or where he lived; that he did not know, but thought that Hartwell was staying at the Metropole (a hotel, or lodging-house, in Eureka) at the time the automobile was borrowed; that Hartwell remained in Eureka "as much as a month" thereafter and that the defendant last saw him "near the 4th of July."

The defendant's testimony given at the trial of Mahach and Rube was properly admitted in evidence. It showed that,

in addition to the testimony set out in the information, the defendant there testified that he and Hartwell ''soldiered together in Europe for twelve or fourteen months, and I met him at different times here—about five years altogether''; that Hartwell was about thirty years of age and unmarried; that defendant did not know where Hartwell came from to Humboldt County and never knew where his parents reside; that he ''said he was working upon the highway some place, I do not know where''; that the defendant's mother had a ranch near Red Bluff and that he had resided at or near that city from May 11, 1919, to about the first of the year 1922, when he went to Redding, where he stayed for two days and then went to Eureka; that there was a California license on the automobile; that he did not read the license number plates but ''supposed'' they were of the year 1922, that they were white but he did not know the color of the letters or figures thereon.

The evidence shows that there is no record in the motor vehicle department of the state of California showing the registration of a Dodge automobile in the name of Elmer L. or E. L. Hartwell in either 1921 or 1922. It must be kept in mind, however, that the defendant is not charged with swearing that the license on the Hartwell automobile was a California license. It is apparent also, from the testimony charged to be false, that the defendant was testifying merely to what appeared upon the face of the license attached to the automobile and not that a license had in fact been issued.

The proprietors of a number of hotels and lodging-houses, including the Metropole, testified that no one was registered at their respective places under the name of Elmer L. or E. L. Hartwell during the month of April, 1922, and that they did not know of such a person. Peace officers and other persons who had resided in Eureka for many years and had wide circles of acquaintances therein testified that they did not know of such a person in Eureka during April, 1922. This evidence, being negative in character, is necessarily weak. Some of these witnesses testified that the population of Eureka was then about fifteen thousand. None of them pretended to know all the residents of the city.

The prosecution produced evidence that a man named Elmer L. Campbell resided during the earlier part of the

year 1921 in Red Bluff and that later in the year his time
was divided between Redding and Eureka and that he was
killed by an explosion of dynamite near Redding on the
10th of November of that year. It may be inferred that
Campbell served in the late war, as one witness testified that
he "knew him better since he came back from the war."
There is evidence from which it may be inferred that he and
the defendant were associated together in the illicit manu-
facture of intoxicating liquor near Red Bluff and probably
at Redding and Eureka. They were seen together frequently
during the year 1921 at Red Bluff and at Redding and for a
time occupied the same room at a Redding hotel. They were
seen riding together in a Dodge touring car belonging to
Campbell. The defendant knew of Campbell's death. About
the time of leaving Red Bluff, Campbell adopted the name
Elmer L. Hartwell and thereafter was known by many persons,
including the defendant, as Hartwell, although others knew
him only as Campbell. It is probable that he conducted his
"bootlegging business" under the name of Hartwell. All this
appears from evidence properly admitted, although some hear-
say evidence was erroneously introduced to prove the same
facts. There was no evidence admitted to show that anyone
named Hartwell resided in Eureka after the death of Camp-
bell, except the testimony of one of the prisoners confined in
the state prison at Folsom. This witness testified that he had
been in a hospital in France during the war and there be-
came acquainted with a wounded soldier named Elmer L.
Hartwell and that he met Hartwell again in Eureka in
October, 1922. The defendant called as a witness the cashier
of the American Express Company at Eureka, who produced
and identified, as one of the records of the company's office a
receipt for goods, shipped from "Manning Gas Maker," San
Francisco, to E. L. Hartwell, Eureka, showing receipt thereof
by the company "Jan. 21, 1922," and ending as follows:
"Received of American Railway Express Co. the above ar-
ticles. E. L. Hartwell. Date of delivery 1-23-22." The de-
fendant offered the instrument in evidence, but the court
sustained the objection of the prosecution thereto. The court
also sustained objections to an order dated "Eureka, Cal., Jan.
17, 1922," directed to "Manning Gas Maker & Co., San
Francisco, Calif.," ordering "one full acquiped No. 2 oil
burner," and signed "E. L. Hartwell," and two orders for

goods, directed to "Geo. Herman & Co.," San Francisco, dated, Eureka, January 17 and April 3, 1922, respectively, and both signed "E. L. Hartwell." The dates of all these instruments were subsequent to the death of Campbell and prior to the time at which the defendant testified he had borrowed the automobile from Hartwell. [2] If properly identified as having been received in the ordinary course of business, these papers were admissible in rebuttal of the evidence introduced by the prosecution tending to show that no person known as Hartwell resided in Eureka after the death of Campbell.

[3] The evidence tending to prove the falsity of the testimony alleged to have been given by the defendant is wholly circumstantial. If it be conceded that it creates a strong probability of the defendant's guilt, or even that it constitutes proof beyond a reasonable doubt thereof, it falls short of the character of proof required to establish a charge of perjury. Section 1103a of the Penal Code provides: "Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances." Section 1968 of the Code of Civil Procedure provides: "Perjury and treason must be proved by testimony of more than one witness. Treason by the testimony of two witnesses to the same overt act; and perjury by the testimony of two witnesses, or one witness and corroborating circumstances."

In *People* v. *Wells,* 103 Cal. 631 [37 Pac. 529], it is said: "Section 1968 of the Code of Civil Procedure provides that perjury must be proved by the testimony of two witnesses, or one witness and corroborating circumstances. This declaration of the code clearly means that the falsity of the accused's statements must be shown to the jury by the positive testimony of two witnesses, or of one witness and circumstances corroborating the statement of such witness, in order that the defendant may be legally convicted of the crime of perjury. In other words, the law prescribes a different rule of evidence in this class of cases, both as to the kind and amount, as compared to the great majority of violations of the law. The rule is different as to the kind of evidence, for positive evidence is absolutely necessary, and circumstantial evidence alone is never sufficient. Again, for nearly all violations of the law, the evidence of one

credible witness is sufficient to support a conviction; but in prosecutions for perjury the rule is clearly to the contrary." In *People* v. *Porter,* 104 Cal. 415, 417 [38 Pac. 88], it is said: "It is contemplated by the statute that there must be the testimony of one witness to facts that are absolutely incompatible with the innocence of the accused before a conviction is justified by the law." (See, also, *People* v. *Maxwell,* 118 Cal. 50 [50 Pac. 18]; *People* v. *Chadwick,* 4 Cal. App. 63 [87 Pac. 384, 389]; *People* v. *Casanova,* 54 Cal. App. 439 [202 Pac. 45]; *Clayton* v. *United States,* 284 Fed. 537.) The rule followed by the courts of this state is in accord with the weight of authority, but in some states a contrary rule prevails. A comprehensive list of authorities on the question is given in 15 A. L. R. 634 and 27 A. L. R. 857. An examination of the decisions shows that there is ground for the following statement contained in a note appearing in 44 L. R. A. (N. S.) 513: "There seems to be considerable conflict as to whether perjury may be proved by circumstantial evidence alone. The main conflict is between the decisions of Texas and California, but a careful examination of the cases shows that a large part of the difference of opinion is as to what constitutes circumstantial evidence. It will be noted that, while the rules finally evolved in those states are directly opposite, convictions of perjury have been sustained in California upon evidence which would be regarded as circumstantial in Texas, and, in the beginning of the rule at least in Texas, the evidence upon which convictions were sustained was such as would have been considered direct and positive by the courts of California." The evidence in this case would be classed as circumstantial by any court. If, as stated in Wigmore on Evidence, section 2041, "the rule is in its nature now utterly incongruous in our system," its abrogation or modification can be accomplished only by legislative enactment.

The judgment and the order are reversed.

Hart, J., and Plummer, J., concurred.