[Crim. No. 5321. Second Dist., Div. Two. May 12, 1955.]

# THE PEOPLE, Respondent, v. MANUEL FRANKLIN O'DONNELL, Appellant.

Thomas D. Griffin and William T. Pillsbury for Appellant.

Edmund G. Brown, Attorney General, and James C. Maupin, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was charged with the offense of perjury[1] in an information containing two counts. Count I charged that he subscribed and swore to the truth of a false affidavit in support of a motion for a new trial in the case of *People* v. *MacCagnan,* (No. 160110). In Count II, he was charged with having knowingly given false testimony at the hearing on the motion for a new trial in the Mac-Cagnan case. After trial by jury, defendant was found guilty as charged in each count. A motion for a new trial was denied. Probation was granted. Defendant appeals from the judgment and the order denying his motion for a new trial.

Defendant's present predicament stems from his participation in the proceedings for a new trial initiated by one MacCagnan, who had been found guilty of unlawful possession of narcotics. In support of MacCagnan's motion for a new trial, there was filed a sworn affidavit executed by defendant on March 25, 1954. On the following day, defendant testified under oath in the course of the hearing on the motion. So far as is here germane, the essence both of defendant's affidavit and his testimony is that either on the seventh or eighth day of June, 1953, he was an inmate of the Long Beach city jail and witnessed MacCagnan being booked and searched by police officers; that while this was taking place, he observed the officers strike MacCagnan; that later MacCagnan was placed in the tank occupied by defendant, whereupon he helped make him comfortable and cleaned up some blood on MacCagnan's forehead and coveralls.

In prosecuting the action, the People sought to establish the falsity of the above statements by showing that on June 7th or 8th, 1953, the dates defendant swore he was an inmate of the Long Beach city jail, he was in fact incarcerated in the Los Angeles county jail. To that end, the contents of

---

[1]Penal Code, section 118, reads: ''Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, willfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury.''

certain official records were introduced in evidence initially to show that defendant was not in the Long Beach city jail between May 13, 1953, and June 18, 1953. Sergeant Sweet testified that in 1953 he was chief jailor for the Long Beach police department and was responsible for supervision both of the jail and the preparation of its records. He testified that the jail register contained an entry showing that defendant was "received in the jail at 11:25 p. m. on five, twelve, fifty-three . . . and that he was sent to court on five, thirteen, fifty-three and sentenced to 30 days in the county jail.[2] He stated the register further disclosed that "on five, thirteen, fifty-three the prisoner was released to the Sheriff." Sergeant Sweet testified that according to the register, defendant was next received in the Long Beach jail on "six, eighteen, fifty-three." He was sent to court the following day and sentenced to 30 days in the Long Beach jail. Despite this 30-day sentence, the only release date subsequently shown on the register was October 8, 1953, four months later. Under cross-examination with reference to this matter, Sergeant Sweet testified: "I know beyond a shadow of a doubt that no man has spent four months in the Long Beach jail on a 30-day sentence. If it shows four months lapse, I know he wasn't in custody all that time." Sergeant Sweet testified that he had no independent recollection of the period between May 13 and June 18, 1953, and that he was not testifying from any personal knowledge with respect to defendant's alleged nonpresence in the Long Beach jail during that particular time. The following testimony by Sergeant Sweet in response to questions propounded by defendant's counsel is worthy of note:

"Q. You testified in direct examination, sometimes a prisoner is held under the same booking number, I said—I think you said for accommodation purposes, is that correct? A. Yes, sir.

"Q. Sometimes the man goes out, after being given a booking number, and for some reason he is brought to court, or he is taken to Los Angeles, or for some other reason, and then he comes back, and you rebook him or give him another booking number? A. That is true.

"Q. So it is possible for a person to be away from your jail and come back and still have the same booking number? A. That is true."

---

[2] According to the transcript of a docket entry of the Municipal Court of the Long Beach Judicial District, Judge Wallace ordered defendant committed to the Los Angeles county jail on May 13, 1953.

None of Sergeant Sweet's nine assistants assigned to handling the jail routine was called to testify.

██ William Eastwood, a deputy sheriff of Los Angeles County, testified he had transported defendant from the Long Beach jail to the Los Angeles county jail on May 13, 1953, at which time he booked him there. He testified that very shortly thereafter he transported defendant back to Long Beach. He did not remember the exact date, but stated that defendant "came back down to the Superior Court." He testified that after having brought him to the county jail on May 13, 1953, he could "remember taking him back [to Long Beach] quite a few times" without being able to fix the exact dates. Rex Kent, another Los Angeles county deputy sheriff, testified from official records in his possession. These records indicate that defendant was booked in the Los Angeles county jail on May 13, 1953, and that he was released from custody on June 12, 1953. Kent testified that he had no personal knowledge regarding the information appearing in the records. He stated that under the system of record keeping followed at the county jail, if a prisoner leaves the jail out of the custody of a sheriff, he is rebooked on his return to the jail. If he leaves the jail in the custody of a sheriff, he is not rebooked on his return, since he is regarded as having at all times been in custody. This matter was elaborated as follows: "MR. GRIFFIN (defendant's counsel): He was in custody from May 13th to June 12th. That's what your records indicate? A. They indicate that he was in custody of the Sheriff between those dates. Q. They don't indicate that he was in Los Angeles all that period? A. No, that wouldn't be necessary . . . THE COURT: In your job, custody, the man may be several places in the County, but he is still in custody, and that is what you are responsible for? A. That is all we are responsible for."

From the foregoing it is clear that the case against defendant was predicated on documentary evidence purporting to show that on May 13, 1953, he was booked at the Los Angeles county jail, that from that date until June 12, 1953, defendant was in the custody of the sheriff of Los Angeles County, and that there was no record that defendant was an inmate of the Long Beach city jail during that period of time. Therefore, in support of the judgment, it is argued that the evidence is sufficient to show a state of facts inconsistent with defendant's sworn statements. On the other hand, defendant contends, in addition to his claim that he was prejudiced by

the exclusion of proffered evidence bearing on specific intent and by the giving of certain instructions, that the evidence was legally insufficient to uphold a conviction for perjury under the strict requireemnts of the pertinent statutes.[3] That contention is sustained by the California cases prescribing the quantum of evidence required to make out the offense of perjury.

In prosecutions for perjury, the falsity of the sworn statements of the defendant must be evidenced by the testimony of two independent witnesses or by one witness and corroborating circumstances. (Pen. Code, § 1103a; Code Civ. Proc., § 1968.) ▋ It is firmly settled in this state that *direct*, as distinguished from circumstantial, evidence of the falsity of defendant's testimony is required from at least one witness. (*People* v. *Wells*, 103 Cal. 631 [37 P. 529]; *People* v. *Porter*, 104 Cal. 415, 418 [38 P. 88]; *People* v. *Maxwell*, 118 Cal. 50 [50 P. 18]; *People* v. *Dixon*, 99 Cal.App.2d 94, 96 [221 P.2d 198].) ▋ These cases, to which may be added *People* v. *Burcham*, 69 Cal.App. 614, 619, 620 [232 P. 149], and *People* v. *Follette*, 74 Cal.App. 178, 201 [240 P. 502], also lay down the corollary proposition that circumstantial evidence alone is not sufficient to support a conviction of perjury.[4] True it is that there has been growing dissatisfaction with the somewhat anomalous and technical rules of evidence hedging about a prosecution for perjury, and several jurisdictions permit proof of perjury upon circumstantial evidence alone, if thereby guilt is established by the degree of persuasion required for other criminal offenses. *Marvel* v. *State*, 3 W.W.Harr. (Del.) 110 [131 A. 317, 42 A.L.R. 1058]; *State* v. *Cerfoglio*, 46 Nev. 332 [205 P. 791, 213 P. 102, 27 A.L.R. 848]; *Wolford* v. *Commonwealth*, 218 Ky. 420 [291 S.W. 366].) Nevertheless, the California rule represents the view prevailing in the majority of American jurisdictions.

---

[3] Penal Code, section 1103a, reads: ''Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.''

[4] A number of jurisdictions recognize two exceptions to the rule that circumstantial evidence is insufficient to support a conviction of perjury. One is where the accused has sworn to a matter whose falsity is not, by its nature, susceptible of direct proof. (*People* v. *Doody*, 172 N.Y. 165 [64 N.E. 807]; *State* v. *Wilhelm*, 114 Kan. 349 [219 P. 510]; *State* v. *Faulkner*, 175 Mo. 546 [75 S.W. 116].) The other is where the falsity may be shown by documents emanating from the accused, or treated by him as containing evidence of the fact in dispute. (*United States* v. *Wood*, 14 Pet. (U.S.) 430 [10 L.Ed. 527]; *Radomsky* v. *United States*, 180 F.2d 781.)

(See annos., 15 A.L.R. 634; 27 A.L.R. 857; 42 A.L.R. 1063.) Whether or not this quantitative rule of evidence is anachronistic, or has outlived its usefulness, it is deeply implanted in the common law tradition of protecting an honestly mistaken witness from undue harassment from vengeful persons, and was designed to render convictions for perjury more difficult to obtain than is the case with most other crimes. (*Weiler* v. *United States,* 323 U.S. 606, 609 [65 S.Ct. 548, 89 L.Ed. 495, 156 A.L.R. 496].) ▮ "Perjury requires a higher measure of proof than any other crime known to the law, treason alone excepted. (*People* v. *De Martini,* 50 Cal. App. 109, 112 [194 P. 506].) As stated in *People* v. *Wells, supra,* page 632: "In other words, the law prescribes a different rule of evidence in this class of cases, both as to the kind and amount, as compared to the great majority of violations of the law. The rule is different as to the kind of evidence, for positive evidence is absolutely necessary, and circumstantial evidence alone is never sufficient. Again, for nearly all violations of the law the evidence of one credible witness is sufficient to support a conviction; but in prosecutions for perjury the rule is clearly to the contrary." This does not mean, of course, that there need be direct evidence of a witness who has testified to the falsity of the statements sworn to by the accused. (*People* v. *Chadwick,* 4 Cal.App. 63, 70 [87 P. 384, 389]; *People* v. *Follette,* 74 Cal.App. 178, 201 [240 P. 502].) ▮ The requirement respecting the quantum of evidence is satisfied if, independent of any inculpatory circumstances shown, there exists direct evidence of a state of facts contrary to that sworn to by the accused, or incompatible or physically inconsistent with his evidence. (*People* v. *Porter,* 104 Cal. 415, 417 [38 P. 88]; *People* v. *Casanova,* 54 Cal.App. 439, 443 [202 P. 45]; *People* v. *Chadwick, supra.*) But this is the irreducible minimum, as is clearly pointed out in *People* v. *Wells,* 103 Cal. 631 [37 P. 529].) In the Wells case, the facts were that one Dillwood had been on trial on a charge of stealing a cow, the cow having been found in Dillwood's barn about 11 o'clock a. m., and having been stolen some miles away the night before. Defendant was a witness in Dillwood's interest and testified that about 8 a. m. of the same morning he saw this cow upon a public highway going toward Dillwood's house, and that he then saw Dillwood drive the cow into his barn, the while stating that the cow was not his cow. Defendant was charged with perjury based on this testimony. The court

stated (p. 632): "As we have already suggested, in order that the evidence may be sufficient, there must be positive testimony to a contrary state of facts from that sworn to by the defendant at the previous trial. For instance, to support the charge of perjury as to the alleged false statement of defendant that he met the cow at the time stated upon this particular public highway, it was necessary to produce the positive testimony of one witness at least that such meeting did not take place, as that the defendant was not at that time at that place, or that the cow was not there; and the same rule is equally applicable to the remaining portions of the alleged false testimony. The corroborating circumstances disclosed by the record are sufficiently established, but the one witness to furnish the positive testimony of the commission of the perjury was not produced at the trial. The record discloses no witness who testifies that the aforesaid meeting between the defendant and the cow did not take place. The falsity of defendant's statements as to the alleged meeting may well be termed the *corpus delicti,* and in cases like the present the *corpus delicti* must be proven by the positive evidence of at least one witness. The defendant's testimony given in the grand larceny case, and, as set out in the information, is only proven to be false by incidents and circumstances occurring at other times and places. And, while such evidence in a case of the present character is proper, as furnishing the corroborating circumstances required by the section of the code we have quoted, it in no sense takes the place of the positive and direct evidence of one witness as to the *corpus delicti* demanded by the statute."

 Viewed in the light of the criteria in the foregoing decisions, it is clear that the evidence in this case is insufficient to meet the special requirements in perjury cases, since it contains not a scintilla of direct evidence regarding the fact here in dispute. The case made out against defendant rests wholly on circumstantial evidence. A brief examination of the essential distinction between direct and circumstantial evidence leads inevitably to this conclusion. "Direct evidence is that which proves the fact in dispute, directly, without an inference or presumption, and which in itself, if true, conclusively establishes that fact . . ." (Code Civ. Proc., § 1831.) Circumstantial evidence is that which tends to establish the fact to be proved by proving another fact or circumstance which raises a reasonable inference or presumption of the existence of the fact in issue. (Code Civ.

Proc., § 1832.). Bearing this distinction in mind, and cognizant that abstract propositions of law require pragmatic interpretations, we perceive no evidence in this case tending to show the falsity of defendant's statements which may, in any sense, be characterized as direct. Not one witness testified directly to the fact that, to his knowledge, defendant was not in the Long Beach city jail on June 7th or June 8th, 1953. In a practical sense, this could also have been established by the direct testimony of a single witness that on those dates defendant was actually in the Los Angeles county jail, or elsewhere. This would be, for all practical purposes, direct testimony that defendant was not then in the Long Beach city jail, in view of the physical impossibility of his being simultaneously in two places. However, no such testimony was adduced, though it was susceptible of direct proof.

Instead, the People relied primarily on two items of documentary evidence: (1) the Long Beach jail register showing no record of defendant's presence there on the crucial dates, and (2) the Los Angeles county jail records, showing defendant was booked there on May 13, 1953, and his release from the sheriff's custody dated June 12, 1953.[5] While evidence of this nature is strongly persuasive and would unquestionably support a conviction for most offenses other than perjury, it does not meet the particular requirements demanded to sustain a perjury conviction. ██ For simply because the evidence is documentary does not dispense with the requirement that it also be direct. (*People* v. *Maxwell*, 118 Cal. 50, 54 [50 P. 18]; *Radomsky* v. *United States*, (9th Cir.) 180 F.2d 781, 783.) ██ And in this element the evidence is fatally deficient. The mere fact that the Long Beach jail register does not list defendant's presence there on June 7th or June 8th is not direct evidence that he was not there on those days. It merely gives rise to a reasonable inference, based on the presumed regularity, reliability and objectivity

[5]We assume only for purposes of this opinion, without deciding the point, that this type of documentary evidence, although not emanating from the accused, may be of the kind contemplated by section 1103a of the Penal Code, which states ''perjury must be proved by the testimony of two *witnesses* or one *witness* and corroborating circumstances.'' (Emphasis added.) In *United States* v. *Palese*, 133 F.2d 600, 602, the court stated: ''It has been held that the production of documentary or written testimony springing from the defendant himself may take the place of a living witness . . .'' (See also *People* v. *Maxwell*, 118 Cal. 50, 53-54 [50 P. 18]; *United States* v. *Nessanbaum*, 205 F.2d 93; *Radomsky* v. *United States*, 180 F.2d 781; *Phair* v. *United States*, 60 F.2d 953, 954.) In the view we take, it is unnecessary to pass on this question.

of the register, that had defendant been there his presence would have been recorded in that place. Thus, though it be accepted as true that there is no record of defendant's presence in the Long Beach jail on the dates in question, this does not directly establish that he was not there, nor is it irreconcilable with the possibility of his having been there. In brief, only by indulging in an inference based on a collateral circumstance may proof of defendant's nonpresence there be established. Though of high probative value, such evidence was circumstantial.[6]

Similarly, the documentary evidence that between May 13th and June 12th, 1953, defendant was in the custody of the sheriff of Los Angeles is not such evidence as, in the language of section 1831 of the Code of Civil Procedure, ''proves the fact in dispute, directly, without an inference or presumption, and which in itself, if true, conclusively establishes that fact.'' Conceding the truth of the record, it does not directly negative the fact in dispute nor is it directly irreconcilable with defendant's statement under oath. Such evidence was merely a species of indirect or circumstantial evidence which would have been of value in corroborating any direct testimony that on June 7th or 8th defendant was not in the Long Beach jail, or that he was in the county jail, or in any other specific place. At most, it raises an inference that defendant was not in the Long Beach jail, or that he was very likely in some other place in the sheriff's custody. But it is not *direct* testimony of a state of facts contrary to that sworn to by defendant or inconsistent and incompatible with his testimony that he was in the Long Beach jail during a time when the documents indicated he was in the sheriff's custody. (*People* v. *Maxwell, supra*; *People* v. *Wells, supra*; *People* v. *Porter, supra*; *People* v. *Burcham, supra*.) For example, the evidence shows that defendant was taken by Deputy Sheriff Eastwood to Long Beach on one occasion after his booking on May 13, 1953, in the county jail, yet this is not reflected in the documents produced by the sheriff. Further, it was pointed out

[6]We may observe, parenthetically, that the Long Beach jail records showed also that defendant was sentenced on June 18, 1953, to 30 days in jail. His release date appears as October 8, 1953. This would give rise, reasonably, to an inference that defendant was in jail almost four months. Yet Sergeant Sweet himself disputed this possibility, testifying that no one, to his knowledge, spent four months in his jail on a 30-day sentence. This merely serves to remind of the ever-present danger inherent in evidence circumstantially deduced from records normally deserving of the presumption of regularity and reliability.

by Deputy Sheriff Kent that a prisoner might be anywhere in the county while still technically in the sheriff's custody, which is all the record purported to show. The People's case resting entirely on circumstantial evidence, it is legally insufficient to support the conviction. Under the authorities cited, such conclusion is ineluctable if the distinction between direct and circumstantial evidence is to be meaningfully preserved and if the immemorial standard of proof in perjury cases is to be maintained, regardless of the compelling force of the circumstantial evidence produced. (*People* v. *Wells,* *supra*; *People* v. *Porter, supra*; *People* v. *Maxwell, supra*; *People* v. *Burcham, supra*; *Radomsky* v. *United States, supra*; *United States* v. *Nessanbaum,* 205 F.2d 93.)

The three cases cited by the People turn on the existence of direct testimony by at least one witness, adequately corroborated. In *People* v. *Chadwick,* 4 Cal.App. 63 [87 P. 384, 389], the question was whether defendant had written certain telegrams before or after his arrest. A witness testified directly that defendant had the telegrams in his possession at the time of his arrest. The court stated: "These facts do not depend upon inference or presumption, but were directly testified to by Pender . . . and directly established the physical fact that the telegrams were written before the arrest of the defendant." In *People* v. *Pustau,* 39 Cal.App. 2d 407 [103 P.2d 224], defendant testified falsely before the grand jury that he and another person had never discussed the transfer of a drainage district. This was *directly* refuted by a witness who was corroborated by a second witness (p. 416). In *People* v. *Kriton,* 73 Cal.App.2d 184 [166 P.2d 45], the question was whether defendant had bought two books in a department store on December 14, 1943, or whether they were pilfered. A store detective testified directly to the fact that defendant removed the books surreptitiously without paying. This was corroborated by the fact that no sales tags were made out to defendant on December 14th, but a sales tag was made out on December 17, 1943, for the sale of such books, three days after defendant was arrested for the theft. In all of the above cases, the vital element of direct evidence, so conspicuously lacking in the instant case, was there present.

The judgment and order are reversed.

McComb, J., concurred.