[Crim. No. 1488. Fourth Dist. Mar. 7, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD BARANOV, Defendant and Appellant.

Thomas Whelan for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

SHEPARD, J.—Defendant appeals from a judgment of conviction of the crime of perjury (violation of Pen. Code, § 118), pursuant to a jury verdict of guilty as charged and from an order denying his motion for a new trial.

### FACTS

In general substance, the facts shown by the record before us are as follows: Louis Barrack, with whom Baranov had been an associate in several business ventures, desired to buy a residence. A considerable number of judgments were outstanding against Barrack. Barrack selected a residence property and persuaded Baranov to consummate the purchase in Baranov's name alone. This involved the signing by Baranov and Baranov's wife, Evelyn, of first, second and third trust deeds and accompanying notes, together with original and amended escrow instructions. Because of the smallness of the cash payment by Barrack, the seller required the real estate

broker, R. C. MacFarlane, to look to the buyer for his commission. Barrack proposed to provide for this by a promissory note from himself to MacFarlane. MacFarlane refused to accept the note with Barrack and wife as the sole signers. The note was taken to Baranov for the signature of himself and wife. Baranov's wife did not want to sign any papers with Barrack. Baranov at first refused to sign the note. Later Barrack returned to Baranov with the note and persuaded him to sign it. Baranov did not take the note or any of the other documents to his wife for her signature but instead caused his bookkeeper and sometime secretary, Lillian Richardson, to sign the name "Evelyn Baranov" to the commission note. Lillian had already signed Evelyn's name to all of the trust deeds, trust deed notes and escrow instructions.

MacFarlane filed an action in the San Diego Municipal Court against Baranov, Barrack, and their wives on the commission note. Barrack defaulted. Baranov filed a verified answer denying execution of the note. The cause came to trial before Judge George G. Crawford. At the commencement of the trial Judge Crawford admonished both attorneys in chambers and thereafter in open court, all the parties, that he had examined the pleadings; that if testimony was in accordance with the pleadings perjury would be necessarily committed by some one and that if false testimony appeared, he would recommend prosecution.

During the civil trial, after some hesitation, Baranov positively and unequivocally testified under oath that he did not sign the note. Just before the noon recess Judge Crawford requested that Lillian Richardson attend as a witness in the afternoon. During the noon recess Baranov, his attorney, Louis Karp, and Lillian, conferred and examined a photostatic copy of the note. Lillian stated to them that the signature of Evelyn Baranov was in her (Lillian's) handwriting. Baranov then said to Lillian that if she had signed it, he must have signed it, so they would have to go down to court that afternoon and testify to the fact that they had signed it. Baranov and Lillian both testified that they went back to court in the afternoon with that intention.

On arriving at court, Karp and MacFarlane's counsel went to Judge Crawford's chambers, leaving Baranov and Lillian in the courtroom. Soon thereafter Judge Crawford resumed the bench and announced that a satisfactory settlement had been reached. The attorneys then stipulated that judgment would be entered against Barrack and wife, that Baranov

and wife would give a promissory note payable over a period of 90 days, and that when the note had been paid in full the action would be dismissed as against Baranov and wife and MacFarlane would assign to Baranov the judgment against Barrack. At some time during this procedure Lillian asked Karp if she was not going to testify and he replied, "No, the case was closed." Baranov testified that when he went back to court in the afternoon it was his intention to take the witness stand and correct his testimony but that he was not permitted to take the witness stand that afternoon. He was then asked, "Did you ask Mr. Karp for permission to take the witness stand to correct your previous testimony?" The district attorney objected on the ground that it was self-serving hearsay. The objection was sustained. Baranov was then asked, "Did you have any conversation with Mr. Karp that afternoon in the courtroom with reference to your taking the witness stand?" Defendant replied, "Yes, I did." He was then asked, "What did you say to Mr. Karp?" The district attorney again objected that this called for self-serving hearsay. The objection was sustained. Again the question was asked of Baranov, "What, if anything, did Mr. Karp say to you when you requested permission to take the stand?" The district attorney again objected on the ground of self-serving hearsay and the objection was sustained.

The trial judge then asked Baranov, "Did you personally request the Judge to take the stand and correct any error you had made in your testimony?" Defendant responded, "Not directly to the Judge, your Honor." After further argument and attempts by defense counsel to get into evidence the conversation between Baranov and his civil trial attorney, Karp, relative to Baranov's resuming the witness stand and changing his testimony in the civil trial, the trial judge's ruling remained the same and the matter was closed.

In the criminal trial, in addition to the evidence of what had thus transpired in the civil trial, two handwriting experts testified that the promissory note in question was signed by Baranov. Attorney Karp was not available for testimony, being out of the state of California at the time of the criminal trial. Barrack testified that about two months prior to the trial of the civil action he telephoned Baranov and asked him why he did not pay the note, and that Baranov replied, "I haven't got the money now. I am just putting MacFarlane off." Mary Jane White, an employee of MacFarlane, testified that before MacFarlane filed suit on the note she went to

Baranov's office to secure a quitclaim deed to the residence property and that he refused unless the commission note was returned to him. This testimony of Barrack and White was denied by Baranov.

## SUFFICIENCY OF THE EVIDENCE

 Defendant Baranov first contends that the evidence is legally insufficient to support the judgment and further complains that the complaint in the civil action was not introduced into evidence and that therefore the testimony concerning the note is not shown as a matter of law to be material. With this we cannot agree. Throughout the criminal trial the promissory note given for broker's commission was repeatedly identified as the subject matter of the civil action. Nowhere was any question raised in the testimony on this subject. There was no confusion whatever on the matter nor is there any question whatever but that Baranov's testimony that he did not sign this note related directly to the note on which the civil action was tried. The note in question was introduced into evidence in the criminal trial without objection. Baranov cites *People* v. *Planer,* 23 Cal.App.2d 251 [72 P.2d 767]. That case, however, was reversed for the reason that the record completely failed to show that the property involved in the civil suit was the same property about which testimony was being given. No such situation is presented by the case at bar.

## SUFFICIENCY OF EVIDENCE UNDER PENAL CODE
## SECTION 1103a

 Baranov next contends that the evidence in this case does not satisfy the requirements of Penal Code section 1103a. We are likewise unable to agree with this contention. Barrack testified directly and unequivocally that he saw Baranov sign the note. The substance of Baranov's testimony and Richardson's testimony clearly amounts to an affirmation that he did sign the note, although he continued to deny any actual memory thereof. Mary Jane White's testimony of the conversation relative to a quit-claim deed and Barrack's testimony of the telephone conversation are clear evidence that the defendant did remember signing the note at some time prior to the commencement of the civil suit. In addition, two handwriting experts testified that the handwriting constituting defendant's signature on the note was in his handwriting.

 The elements required to be proved to establish the

crime of perjury in violation of Penal Code section 118 are that defendant ". . . (a) took an oath that he would testify, declare, depose or certify truly before (b) a competent tribunal, officer or person, (c) that such oath was taken in a case in which an oath may be lawfully administered, and (d) that defendant wilfully and contrary to such oath stated as true a material matter which he knew to be false." (*People* v. *Guasti*, 110 Cal.App.2d 456, 463 [6] [243 P.2d 59].)

Section 1103a reads as follows: "Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances."

Even a casual reading of the section makes it clear that there is the alternative of two witnesses directly testifying or of one witness and corroborating circumstances. ██ As was stated in *People* v. *O'Donnell*, 132 Cal.App.2d 840, 845 [5] [283 P.2d 714], "The requirement respecting the quantum of evidence is satisfied if, independent of any inculpatory circumstances shown, there exists direct evidence of a state of facts contrary to that sworn to by the accused, or incompatible or physically inconsistent with his evidence"; and in *People* v. *Di Giacomo*, 193 Cal.App.2d 688, 693 [6], [14 Cal.Rptr. 574], "To fulfill the minimum requirements of the statute there must be at least the positive testimony of one witness furnishing direct evidence of facts that are absolutely incompatible with the innocence of the accused, 'corroborated by circumstances which, of themselves and independently of such directly inculpatory evidence, tend, with a reasonable degree of certitude, to show that the accused is guilty as charged.'" See also *People* v. *Barry*, 153 Cal. App.2d 193, 208 [18, 19] [314 P.2d 531]. ██ We are satisfied that the evidence was ample to fulfill the requirements of Penal Code section 1103a.

## WILFUL INTENT TO SWEAR FALSELY

██ Baranov further contends that there is no evidence of his wilful intent to swear falsely at the time he gave his testimony in the civil trial. We find no merit in this contention. Baranov does not now deny the fact that he did sign the note in question. In the civil trial, responding to a question as to whether or not he had his secretary sign his wife's name to a document, he said, "No. My secretary has never signed my wife's name or my name." At the criminal trial, the evidence offered by Baranov himself clearly showed this was not true. The testimony of Barrack and White respecting Baranov's responses to inquiries prior to the civil trial, as

hereinbefore noted, as well as the entire circumstances, would have supported a conclusion by the jury that the questioned testimony was wilfully and intentionally false. It was a question of fact for the trier of fact to determine. ■ As was said in *People* v. *Barry, supra,* page 208 [17], "The question of guilty knowledge was one of fact for the trial judge to determine." See also *People* v. *Todd,* 9 Cal.App.2d 237, 241, 242 [1, 2] [49 P.2d 611]; *People* v. *Darcy,* 59 Cal.App.2d 342, 348 [6] [139 P.2d 118]; *People* v. *Dixon,* 99 Cal.App.2d 94, 96 [4] [221 P.2d 198].

### BARANOV'S ATTEMPT TO CORRECT TESTIMONY

■ Baranov next contends that the trial court committed prejudicial error in refusing to permit him to testify that in the civil trial, immediately after the noon recess, he requested the permission of his attorney to take the witness stand and change his testimony respecting his signing of the note. He further contends that the refusal of the trial court to give an instruction requested by him on this subject enhanced the prejudicial nature of the error in refusing to admit the testimony above noted. With this we agree.

■ As is set forth in 64 American Law Reports 2d 279 [§ 3], "Most courts considering the question agree that a correction by the defendant, or his attempted correction, of testimony before the tribunal where he originally appeared, may be of some value in showing that he was mistaken in giving his former statements, or that he inadvertently omitted significant evidence when first testifying, so to support the conclusion that he did not wilfully intend to testify falsely."

This statement is supported by more than 20 authorities, including the United States Supreme Court and courts of appellate jurisdiction in Connecticut, District of Columbia, Illinois, Indiana, Kansas, Missouri, New Jersey, New York, Oklahoma, Pennsylvania, Washington and England; and an examination of these authorities makes clear that the statement above quoted reasonably and fairly represents the opinion of the authorities cited. A vital part of the charge of perjury is the wilful and intentional character of the false swearing. The prompt correction of false testimony by a witness during the proceeding in which the false testimony has been given has been recognized in some jurisdictions as a complete defense, notably New York, although this is true only when the correction occurs before the body conducting the inquiry has been deceived or misled to the harm and

prejudice of its investigation and when no reasonable likelihood exists that the witness has learned that his perjury is known or may become known to the authorities. (*People* v. *Ezaugi,* 2 N.Y.2d 439 [141 N.E.2d 580, 582-583 [1]].)

However, we are satisfied that the adoption by California courts of the general rule on correction only goes so far as to make of the correction during the trial *evidence* which may be considered of some value in determining the question of fact on whether or not the witness did or did not have wilful intent to testify falsely. It is recognized by us as one of the exceptions to the hearsay rule classified as a "verbal act." (*People* v. *Frangadakis,* 184 Cal.App.2d 540, 549 [9] [7 Cal.Rptr. 776].) We think the rule that this is merely evidence to be weighed along with all the other evidence of the case is much more reasonable and satisfactory than the rule making prompt correction an absolute defense.

Baranov's attorney was an officer of the court and was in exclusive control of the representation of Baranov before the civil court in this instance. (*Epley* v. *Califro,* 49 Cal.2d 849, 854 [3] [323 P.2d 91]; *Wells Fargo & Co.* v. *City & County of San Francisco,* 25 Cal.2d 37, 42 [7] [152 P.2d 625].) He was the person to whom Baranov properly presented his request to resume the witness stand and it was through him that the matter should have been presented to the trial court. The civil case was not then "closed." Baranov's change of testimony at that point could have resulted in a withdrawal of the stipulation and entry of a judgment against Baranov. The question by the trial judge in the criminal action in which he asked Baranov whether or not Baranov had personally made the request of the trial judge, had the effect of leading the jury to believe that that was the proper procedure, and that any request made to Baranov's attorney in the civil action was improper and of no effect. Baranov should have been allowed to answer the question propounded by his own counsel. (*People* v. *Kennedy,* 180 Cal.App.2d 862, 869 [1b] [4 Cal.Rptr. 862]; *People* v. *Frangadakis, supra.*)

Baranov requested of the court that it instruct the jury as follows:

"You are instructed that a correction of his testimony or an attempt to correct his testimony on the part of one charged with perjury before the tribunal where he originally appeared, may be of value in showing that he was mistaken in giving his original testimony or that he gave his testimony

inadvertently, and thus tend to support the conclusion that he did not wilfully intend to testify falsely.

"The fact, if it be a fact, that he was not permitted to take the witness stand to correct previously given erroneous testimony because his counsel settled the litigation in question to the satisfaction of the other party to the litigation and the Court which resulted in the accused not being allowed to take the witness stand to correct his previous testimony, may be considered by you as supporting the conclusion that the defendant did not willfully intend to testify falsely at the time he gave the alleged false testimony."

This instruction was refused and no other instruction embodying this particular theory of the case was given.

The principal theory of Baranov was that his testimony was given innocently and without any intent to deceive because he could not remember having signed the document in question. The jury may not have believed him, even though the rejected testimony had been admitted. However, Baranov was entitled to have them consider this question under proper instruction. As was said in *People* v. *Carmen,* 36 Cal.2d 768, 773 [1-3] [228 P.2d 281]:

"Section 1127 of the Penal Code provides; '. . . *The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses.*' (Emphasis added.) It has been held that a defendant is entitled to instructions on his theory of the case as disclosed by the evidence, no matter how weak. As so ably stated in *People* v. *Burns,* 88 Cal.App.2d 867, 871 [200 P.2d 134], with ample citation of authority: 'It is *elementary* that the court should instruct the jury upon every material question upon which there *is any evidence deserving of any consideration whatever.* [Citations.] *The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon.*" See also *People* v. *Lewis,* 186 Cal.App.2d 585, 597 [5-8] [9 Cal.Rptr. 263]. The People, respondent herein, contend that the instruction directed the jury as to the weight of the evidence. We do not so construe it. It does not say *what* weight is to be given to such evidence; it merely calls attention to the evidence as something to be considered. If the trial court had desired to reword the instruction or if the People had desired to submit a different instruction embodying the same thought, it would have been proper, but the instruction as submitted did not misstate the law.

Viewing the entire record in the light of the interpretation of the Constitution, article VI, section 4½, given in *People* v. *Watson,* 46 Cal.2d 818, 835-837 [12] [299 P.2d 243], we are compelled to the conclusion that the errors above referred to resulted in a miscarriage of justice.

The judgment and order appealed from are reversed and the case is remanded for a new trial.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied April 3, 1962, and respondent's petition for a hearing by the Supreme Court was denied May 2, 1962.