[Crim. No. 5764. First Dist., Div. One. Nov. 20, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RUTH ELLA McRAE, Defendant and Appellant.

Jack K. Berman, Burton Marks and Harvey A. Schneider for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Charles W. Rumph, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant was granted probation and the suspension of execution of sentence under a judgment which sentenced her to state prison on one count, and was granted probation and the suspension of imposition of sentence on a second count, following her conviction by a jury of two counts of perjury, in violation of the provisions of section 118 of the Penal Code.[1] She has appealed from the judgment, and the

---

[1] The two counts embody what is but one continuing offense with a single objective. The provisions of section 654 of the Penal Code, as

appeal will be deemed to include the order granting probation on the second count. (See Pen. Code, § 1237.)

On November 25, 1961 defendant Ruth Ella McRae was involved in an automobile accident in San Francisco. The other party to the accident admitted liability and the case proceeded to trial on the question of damages. During the course of the trial, in testimony given on October 22 and 23, 1964, Miss McRae gave answers to 26 questions posed during cross-examination, denying that she ever had previously suffered an injury to her pelvis or lower abdominal area, that she had been involved in an accident on June 27, 1957, in San Francisco, that she knew or had ever been represented by an attorney named John Quinn, and that she knew Curtis Pennington. On the following Monday morning after recess, Miss McRae, in open court, dismissed her case.

Defendant was subsequently indicted and charged with perjury in two counts. The first count referred to 16 specific questions and answers covering the testimony in which she denied that she had been in an accident in 1957, that she had previously suffered and had been treated for injuries, that she filed an action to recover for such injuries, or that she knew the attorney who filed the action on her behalf. The second count was based on her answers to 10 questions concerning her acquaintanceship with one Pennington whose surname she was using at the time of the 1957 accident. Prior to the submission of the case to the jury, the court, on defendant's motion, struck 9 questions and answers from the first count, and 7 from the second count. The remaining 10 statements are set forth in the margin.[2]

Defendant's contentions on appeal may be conveniently grouped into allegations of: (1) error in overruling her objec-

interpreted by the courts, preclude multiple punishment for related criminal acts with one objective. (*Neal* v. *State of California* (1960) 55 Cal. 2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Buice* (1964) 230 Cal.App.2d 324, 346-347 [40 Cal.Rptr. 877]; *People* v. *Rainey* (1964) 224 Cal.App.2d 93, 101-102 [36 Cal.Rptr. 291].) Since sentence has been imposed on only one count, and defendant's admission to probation on the second count has suspended proceedings on that count, there is no violation of section 654. (*People* v. *Buice, supra,* 230 Cal.App.2d 324, 347.)

[2]Count I: ''Q. And at no time before November 25th, 1961, had you ever sustained any injury whatsoever to your lower abdominal area or your pelvic area or your side, that's true, isn't it? A. That's correct. Q. Do you know an attorney by the name of John Quinn? A. No. Q. You are telling us that you don't know an attorney by the name of John Quinn, correct? A. That's right. Q. You have never been represented by an attorney by the name of John Quinn, is that right? A. No, I haven't. Q. Is it your testimony that you were not in an accident on June 27th,

tions to the indictment, (2) errors in the admission of evidence, (3) insufficiency of the evidence, (4) misconduct of the court, and (5) errors in the instructions given and refused. A review of the record and the applicable principles of law reflects no prejudicial error. The conviction must be affirmed.

Parenthetically it may be noted that the crux of defendant's complaint is comprehensible pique arising from the circumstance that a judge and prosecutor, who were admittedly unfamiliar with the details of a perjury prosecution, absorbed these essentials during the course of the trial. Defendant thereby had to meet a stronger case than she anticipated. There is, however, no doctrine which gives a vested right to the perpetuation of ignorance or error as a ground for evading criminal responsibility.

The pertinent facts are discussed in connection with the points to which they appertain.

*Defendant's Attacks on the Indictment*

The defendant interposed an oral motion to dismiss the indictment under the provisions of section 995 of the Penal Code and supplemented it with a written motion, supported by points and authorities, to dismiss under the provisions of that section, or, in the alternative to strike certain questions and answers set forth in the indictment. This motion was denied as to each alternative, and the defendant entered her plea of not guilty to each count.

Thereafter, she was permitted to withdraw her pleas and a written demurrer was filed on her behalf. This demurrer was overruled, and she reentered her pleas of not guilty.

Over eight months later the defendant filed a second written demurrer. At a subsequent hearing the court refused to permit the defendant to withdraw her pleas so the demurrer could be considered. (See Pen. Code, § 1004; and *People v. Linton* (1929) 102 Cal.App. 608, 611-612 [283 P. 389].) The case was continued to a date which had previously been set for trial.

1957, on Geneva Avenue near San Jose Avenue? A. That is true. Q. And it is your testimony, further, that you didn't file a lawsuit as a result of that accident? A. That is true. Q. And it is your testimony, further, that you never saw Dr. Coleman before November 27, 1961? A. That is true.''

Count II: ''Q. So that I understand you and we all understand you, Miss McRae, is it your testimony that you have never met a man by the name of Curtis Pennington? A. Correct, not that I remember. Q. Are you telling us that the only name you have ever been known by is Ruth McRae? A. That's right. Q. Do you deny you ever referred to Curtis Pennington as your husband? A. That is true.''

Defendant renewed her motion to strike at the conclusion of the People's case. Two questions and answers were then stricken from the first count, and two questions and answers from the second count. During the course of the defendant's case, the court reopened the matter and struck an additional 12 questions.

Defendant then moved for a mistrial on the ground that the failure to strike these questions and answers at an earlier stage of the proceedings had permitted the People to present prejudicial immaterial evidence on the subject matter of the prior testimony involved. Examination of the matters which were stricken demonstrates that they were so closely related to the matters remaining in issue that the evidence introduced would have been admissible even if the motion to strike had been previously granted. It is only necessary to consider the remaining allegation of the indictment (see fn. 1), in testing the propriety of the trial court's earlier rulings.

Defendant contends in her brief that each count of the indictment was uncertain in that it failed to set forth which of the matters included were material; and that all of the matters should have either been embodied in one count, or in 26 separate counts.

"It is established in our law that it is for the judge presiding at the perjury trial to determine the materiality of the allegedly perjured testimony." (*People* v. *Curtis* (1939) 36 Cal.App.2d 306, 319 [98 P.2d 228]; *accord: People* v. *Macken* (1939) 32 Cal.App.2d 31, 41 [89 P.2d 173].) "There are two modes by which the materiality of the alleged false statement may be shown in criminal pleading: 1. By setting forth the nature of the issue, and the evidence given thereon, so that, as a matter of law, it may be said the testimony upon which the perjury is assigned is material to the issue; 2. By showing an action at issue in a court of competent jurisdiction, the testimony given, its willful and felonious falsity, coupled with the averment that it was *material to the issue.*" (*People* v. *Ah Bean* (1888) 77 Cal. 12, 15 [18 P. 815]; and see Pen. Code, § 966.) The general allegations of materiality in the indictment were sufficient, and they must be deemed to apply to all of the testimony set forth.

No prejudicial error is found in combining numerous questions and answers in one count. The practice has been approved. (*People* v. *Follette* (1925) 74 Cal.App. 178, 190-191 and 199-200 [240 P. 502].) The grouping in one count of the testimony of the 1957 accident, the injuries, the treatment,

and the litigation which ensued, and, in a second count, the testimony of the defendant's use of the Pennington name, did not create any prejudice to defendant.

Defendant seeks to incorporate, by reference in her brief, the points and authorities filed in the lower court in support of her motions. There is nothing to recommend this practice. This court should not have to search the record for arguments which defendant has failed to raise in her brief. Nevertheless, since some of the points first made at that time have been reiterated in connection with other issues raised in her brief, they may be discussed under this heading.

The alleged insufficiency of the evidence before the grand jury to support those questions and answers which have been stricken was rendered moot by that action. Of the remaining questions, it was conceded that an issue was raised in regard to prior injuries to defendant's pelvic area. Although defendant contended that the questions regarding her acquaintance with, and representation by Quinn were immaterial, it is obvious that in the whole fabric of the two civil cases these questions were significant and material. The last three questions and answers of the first count (see fn. 1) were conceded to be proper issues supported by testimony before the grand jury. The unstricken questions of the second count were subject to a general objection of immateriality. Here again, in the perspective of the entire case, the use of the name Pennington was highly significant.

There was no prejudicial error in ruling on the defendant's motions and demurrers.

*Rulings on Evidence*

■ Defendant contends that the court erred in admitting the testimony of the other party to the 1957 accident, and of the police officer who investigated that occurrence, because their names were not set forth on a list of witnesses furnished to defendant after she had made a motion for discovery. A similar objection is made to the use of an unlisted deposition from the first civil suit, which was produced by attorney Quinn.

Following arraignment, defendant's counsel filed a motion for discovery, and a declaration in support of the motion. This motion was thrice continued. The defendant acknowledges that no written response was made to the motion, but asserts that approximately a week before the trial the prosecutor furnished her with a list of proposed exhibits, allowed her to examine them, and stated that the witnesses would be

those persons who appeared before the grand jury.

When the prosecutor elicited from attorney Quinn during his testimony that he had a copy of a deposition of defendant taken in the first civil action, defendant promptly objected to the admission of any of the contents of the deposition on the ground, among others, that it was not within the purview of the information revealed pursuant to the discovery motion. It was established that Quinn, who had previously discussed the case with both the prosecutor and the attorney for the defendant, had never shown the deposition to either party before coming to testify. Defendant's objection was overruled.

In chambers, the prosecutor revealed that he was going to produce witnesses whom he had not named in response to the discovery motion. He acknowledged that he had enumerated the witnesses he would call, and that the names of the other party to the 1957 accident and of the officer who investigated that accident were not included. His statement that those names were included in a police report which had been exhibited to defendant's attorney is uncontradicted, and the record reflects that defendant, since she filed a civil suit against the other party, had knowledge of his name.

The trial court opined that the disclosure of the names in the police report did not satisfy the requirements of discovery, but it found no prejudice or surprise to the defendant, and overruled the objection.

The omission to furnish the names of these witnesses having been conceded, inquiry is directed to the question of whether that omission was prejudicial. (*People* v. *Morris* (1964) 226 Cal.App.2d 12, 15-16 [37 Cal.Rptr. 741].) Defendant's claim of prejudice is predicated upon the provisions of section 1103a of the Penal Code, which read: ''Perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.'' (See also Code Civ. Proc., former § 1968.) ''This statutory provision has been interpreted as prescribing not only the amount but also the kind of evidence necessary to support a perjury conviction. [Citations.] Direct, as distinguished from circumstantial, evidence of the falsity of the defendant's testimony by at least one witness is generally required. [Citations.] This does not mean that there must be a denial in the very words of the defendant's testimony [citations] but that there must be testimony by at least one witness furnishing direct evidence of facts contrary to, or absolutely incompatible or physically inconsistent with, that sworn to by the accused. [Citations.] Evi-

dence that establishes facts from which the falsity of an alleged perjured statement may or may not be inferred is insufficient under the direct evidence rule. [Citation.]'' (*People* v. *Roubus* (1966) 65 Cal.2d 218, 221, fn. omitted [53 Cal.Rptr. 281, 417 P.2d 865].) She asserts, ''The failure to introduce direct evidence of this accident and the lack of intention of the prosecution at the onset of the case to introduce direct evidence of this accident demonstrates the prejudice suffered by the defendant by the subsequent granting of the motion by the Court. It is clear that the entire strategy of the defendant's case was disrupted when the Court permitted these two witnesses to testify. . . . The need for sanctions is all the more compelling in the instant case for the reason that the witnesses who were not named were absolutely necessary to prove the prosecution's case.''

The introduction of this evidence was prejudicial to defendant in the sense that it contributed to her conviction. That type of prejudice characterizes practically all evidence introduced against a defendant in a criminal proceeding. The prejudice of which defendant can properly complain, is that which might have prevented her from properly presenting her case. The following sage remarks of the trial court are controlling: ''I say that it is a legitimate filling of the gap because of your own statement, that discovery is not a game. There is no surprise to the defendant here. If she was relying on a technical defect because she might have assumed that the District Attorney was asleep. That's not the way we operate these courts, I hope, and there is nothing in here that she didn't know about, the personnel involved she knew about. The officers were there. She knows that the driver of the other car with whom the contact was made and whom she sued. She knows that. So, there is no surprise at all. It's just a filling of a technical gap in the case, if there is one, and I don't think that they should be precluded from doing that because, so to speak, they might have been asleep on whether they had proved—were in a position to prove the accident by evidence other than hearsay.'' Defendant merely lost an advantage which she was not entitled to enjoy.

In any event, if the truth is to be served, the failure to disclose, at least where not wilful, should not be punished by the suppression of evidence, but by giving the offended party a proper opportunity to meet the new evidence. (*Cf. People* v. *Washington* (1958) 163 Cal.App.2d 833, 843-845 [330 P.2d 67].) In the case of the use of the newly discovered deposition, the court, albeit tardily, did give the defendant time to

review what was allegedly her prior testimony. No request for a continuance or other delay was interposed in connection with the testimony of the two new witnesses. (See *Kauffman* v. *De Mutiis* (1948) 31 Cal.2d 429, 432-433 [189 P.2d 271].) The court did not err in permitting reference to the deposition or in receiving the testimony of the two witnesses, and it properly denied defendant's subsequent motion to strike the testimony of those witnesses.

■ Defendant assigns numerous errors in connection with the testimony of the attorney who represented the defending tortfeasor in the second personal injury suit. The objection that the transcript of those proceedings was the best evidence of her testimony may have been well taken. (But *cf. People* v. *Kulwin* (1951) 102 Cal.App.2d 104, 109 [226 P.2d 672].) The trial court overruled this objection on the theory that two witnesses were necessary for the proof of the utterance of the alleged false statement, rather than, as is the law, necessary for proof of the facts which were inconsistent with it. There is no claim that this witness' testimony contradicts the record of that trial. Insofar as it is consistent with that record it was merely cumulative and not prejudicial. It was stipulated that defendant gave the testimony attributed to her at the 1964 trial. Defendant's objections to other testimony elicited from this attorney concerning the issues involved in the 1964 proceeding, and relating to other collateral matters which reflected on the truth of her assertions in that case were properly overruled.

■ Defendant's objection to testimony elicited from the attorney who represented her in the first, 1957, action, are predicated upon the premise that her admissions at that time are not direct evidence that the true facts are inconsistent with her 1964 testimony.[3] They are, nevertheless, sufficient for corroboration within the requirements of the statute. (See *People* v. *Wells* (1894) 103 Cal. 631, 633 [37 P. 529].) The same precept applies to her objections to the testimony concerning her declarations given by the doctor who treated her in 1957-1958 and again in 1964. The requirement of direct

[3]Defendant's attack is based on the premise that it was necessary to prove by direct evidence that the accident in fact occurred in 1957. It is arguable that since the material consideration in the second suit was the existence of, and treatment for, preexisting complaints, proof of the falsity of the other answers would be sufficient to show perjury. In other words, the existence of the physical complaints, not their cause, was the significant point. The People, however, have elected to meet the defendant on her own terms and the matter is so reviewed in this opinion.

evidence does not preclude the use of circumstantial evidence, including admissions, for corroboration. The difficulties the doctor had in identifying the defendant as the Mrs. Pennington he treated at the earlier period affect only the weight, not the admissibility of his testimony.

Defendant insists that the questions at the second trial relating to her professional relationship with her attorney in the earlier action, and her domiciliary relationship with Pennington were not material, and that, therefore, it was prejudicial error to receive evidence concerning these matters. "The test of materiality is whether the testimony could have probably influenced the tribunal before which the cause was being tried on the issue involved. [Citations.]" (*People* v. *Davidson* (1964) 227 Cal.App.2d 331, 335 [38 Cal.Rptr. 660].) The issue in 1964 was whether the injuries allegedly received in 1961 predated the accident which occurred in that year. In order to show that they did it was necessary to establish the identity of defendant and "Ruth Pennington." The questions were, therefore, material in the second action. In this prosecution the defendant stipulated that she was the same person as Ruth Pennington who had filed the earlier personal injury action, and who also had filed two actions against Pennington, one for personal injuries and a second involving property rights. This stipulation did not extend to acknowledging the falsity of the answers given in 1964 and the prosecution was entitled to present evidence of facts contrary to or absolutely incompatible or physically inconsistent with those sworn to by the accused in 1964. Furthermore, in view of defendant's contention that she erased her "Pennington" life from her mind, the prosecution was entitled to bring out the details of that relationship so that the trier of fact could properly evaluate the truth of defendant's assertion.

*Sufficiency of the Evidence*

Defendant relies upon the principles quoted above from *People* v. *Roubus* (65 Cal.2d at p. 221) to support her contention that the evidence was insufficient to sustain a conviction because of lack of direct evidence of facts inconsistent with her 1964 testimony. (See also *People* v. *Maxwell* (1897) 118 Cal. 50, 51 [50 P. 18] ; *People* v. *Wells, supra,* 103 Cal. 631-632; *People* v. *DiGiacomo* (1961) 193 Cal.App.2d 688, 692-694, 695 and 698 [14 Cal.Rptr. 574] ; *People* v. *Chiuminatta* (1957) 156 Cal.App.2d 169, 172 [318 P.2d 753] ; *People* v. *Barry* (1957) 153 Cal.App.2d 193, 206 [314 P.2d

331] ; *People* v. *O'Donnell* (1955) 132 Cal.App.2d 840, 844-847 [283 P.2d 714] ; *People* v. *Pustau* (1940) 39 Cal.App.2d 407, 415 [103 P.2d 224] ; *People* v. *Macken, supra,* 32 Cal. App.2d 31, 35 ; *People* v. *Follette, supra,* 74 Cal.App. 178, 201-205 ; *People* v. *DeMartini* (1920) 50 Cal.App. 109, 112 [194 P. 506] ; and Code Civ. Proc., former § 1831, now recast as Evid. Code, § 410.)

The perjury trial began with the testimony of John T. Harmon, the defense attorney in the 1964 personal injury action. Mr. Harmon indicated that at the time of trial he was aware of defendant's prior medical problems and accident record, which were discovered in his investigation ''to find out whether any conditions that were alleged were caused in that accident rather than in the one'' he was trying. He testified that in 1964 he questioned the defendant and received the answers specified in the perjury indictment. He also testified that during the course of the 1964 trial, he saw defendant address John Quinn, the attorney who represented defendant in a 1957 personal injury accident. Later in the trial, during cross-examination, Harmon questioned defendant as to whether she knew an attorney by the name of John Quinn. Defendant denied knowing Quinn, and indicated that the only person she waved at during the trial was Willie Brown, a Negro attorney.

John Quinn testified that he represented defendant in a law suit in 1957, that the suit was filed on behalf of Ruth Pennington against Aretha Price, and that the complaint, for damages resulting from a 1957 automobile accident, was prepared from information furnished by Ruth Pennington. Quinn related what defendant had told him concerning the circumstances of the 1957 accident. Quinn read into the record answers to interrogatories submitted to defendant in the 1957 action, in which she stated that her husband's name was Curtis Pennington, that she resided with him, that she was examined and treated by Dr. Arthur Coleman two days after the accident, and that as a result of the accident she suffered ''spasm of neck, spasm of back, traumatic shock, pelvic injury, nervousness.'' He also disclosed that he had a deposition made by defendant for purposes of the 1957 action which again stated that defendant's name was Ruth Ann Pennington, that she was married to Curtis Pennington, and that she had an injury on her right side. Quinn testified that he represented Curtis Pennington on two occasions subsequent to the 1957 action. One suit was a personal injury action

brought by defendant, stemming from an alleged assault on her, and the other was a suit to determine the interests of defendant and Pennington in property held in joint tenancy. He also testified that he talked with defendant during the course of the 1964 trial.

Dr. Arthur H. Coleman testified that he treated a Ruth Pennington in 1957, and that his records indicated a pelvic complaint. He indicated he conducted a gynecological examination which disclosed a pelvic inflammatory disease. He testified that he treated a Ruth McRae following an accident in 1961, and that he did not then recognize her as his former patient. At this time, he again found tenderness in the pelvic area.

Curtis Pennington was called and testified that he dated defendant for about a year and a half prior to 1956, that in 1956 defendant "moved in with him," that in 1959, he and defendant, using the name Ruth McRae Pennington, took title to a house in joint tenancy, that during the period of cohabitation he and defendant held themselves out to the public as man and wife, that in 1957 he owned a 1955 Buick Roadmaster, that defendant indicated she had been involved in an accident with the car, that he knew defendant filed a law suit as a result of an accident, that defendant filed suit against him for assault and battery in 1962, that in 1962 a suit to dissolve the joint tenancy was filed, that he ceased living with defendant in 1963, and that he saw and was acknowledged by defendant at various stores two or three times between July 1963 and October 1964.

Aretha Price testified that he was involved in an automobile accident in San Francisco on June 27, 1957. Mr. Price testified that a woman was driving the other vehicle and that she gave her name as Mrs. Ruth Ella Pennington. He could not specifically identify defendant as the person involved in the 1957 accident.

Officer James W. Greely, a San Francisco police officer, testified that he investigated an accident on June 27, 1957, in which the driver of a Buick identified herself to him as Ruthie A. Pennington, and gave her address. He indicated that the vehicle was ascertained to be registered to a Curtis A. Pennington at the address given. He testified on the basis of a police report made at the time of the accident, since he had no independent recollection of the matter.

The defendant stipulated that she was "the same person as the party referred to in the other three files in which she may.

have been named McRae and/or Pennington, or whatever, that she is the same person.'' The prosecutor read into evidence portions of the deposition of Ruth Pennington taken on January 3, 1958, in the case of *Pennington* v. *Price.* That deposition established her relationship to Curtis Pennington and the fact that she had suffered pelvic injuries in the accident in 1957. He then read into evidence portions of the deposition of Ruth Ella McRae taken on May 27, 1963, relating to the automobile accident of November 25, 1961. In this deposition, defendant denied ever having any pain in her right side before the 1961 accident, that she had ever seen Dr. Coleman for any treatment of any kind prior to the 1961 accident, and that she had ever been under medical care, except for a few bone injuries to her knee, ankle and finger. She further deposed that she had had no pelvic symptoms prior to the 1961 accident.

The prosecutor then read into the record certain portions of defendant's testimony in the personal injury action in 1964. Basically, that testimony was directed to the pelvic injury suffered in the 1961 accident. She testified under cross-examination by Mr. Harmon that she had never seen Dr. Coleman prior to the visit after the 1961 accident, that she had never been troubled with any discomfort in the pelvic area, and that everything she testified to was correct.

Defendant testified that because of her unpleasant relationship with Curtis Pennington, and because of a series of assaults and attacks upon her by Pennington, she ''completely blocked out'' of her mind anything involved in any way with him. She indicated this included the 1957 incident, and in fact Pennington himself. She indicated she could only recall events because they had been brought to her attention during the procedure of the perjury trial. Defendant did, however, recall the 1957 accident at the time of her perjury trial.

C. Dan Lange, an attorney, testified he represented defendant in the 1964 personal injury action. He testified that following defendant's cross-examination by John Quinn, he repeatedly asked defendant if she had ever been known by the name of Ruth Pennington, and that when he finally asked her whether Ruth McRae and Ruth Pennington had at any time occupied the same body, she said yes. He indicated that his general impression was that ''at least in her mind, there was no such thing as a Ruth Pennington anymore.''

From the foregoing it is clear that there is evidence of facts contrary to, and absolutely incompatible and physically

inconsistent with, the answers given by the defendant in her 1964 testimony. (*Cf.* fn. 1, *supra.*)

Defendant attacks the doctor's testimony which demonstrated the falsity of her prior testimony concerning her earlier injuries, and consultation with him, on the ground that the doctor testified "that he did not recognize the defendant as the same person he had treated in 1957 and 1958." His testimony was that he believed he saw the defendant under the name of Ruth Pennington at that time. It was in 1961 when she returned under the name of Ruth McRae that he failed to recognize her as the same person. There is nothing in the record to indicate that the person referred to in his testimony relating to both occasions was other than the defendant sitting before him at the trial.

Defendant conveniently glosses over the direct testimony of her former attorney and that of her paramour which establish the falsity of her answers concerning her respective relations with them. Her claim that these questions were immaterial has been discussed above. She concentrates on the evidence concerning the occurrence of the accident itself. (See fn. 2, *supra.*) In addition to opposing the use of the testimony of the other party to the accident, Price, and of the investigating officer, Greely, she contends that, even if admitted, this testimony is inadequate to establish that she was in an accident in 1957.

Price, the defendant in the action which arose out of the 1957 accident, when asked whether the defendant was the same person as the lady who was driving a 1955 Buick, and who identified herself as Mrs. Ruth Ella Pennington, indicated that she was of the same size and height. Greely, the officer, had no independent recollection, but testified from a report made at the time of the accident. "Where a proper foundation is laid a witness may, of course, use a document to refresh his recollection or may testify from the document although he retains no recollection of the particular facts. (Code Civ. Proc., § 2047; . . .)" (*People* v. *Roubus*, *supra*, 65 Cal.2d 218, 222.)

 The testimony of Price establishes that a woman similar in appearance to defendant was involved in a collision with his car. The testimony of the officer is, in part, a relation of information received from the defendant. It may, therefore, be considered as circumstantial evidence, along with the other admissions of the defendant contained in the proceedings arising out of the 1957 accident. (See Code Civ. Proc., former

§ 1832; *People* v. *Roubus, supra,* 65 Cal.2d 218, 222; and *People* v. *Koenig* (1946) 29 Cal.2d 87, 91 [173 P.2d 1]; and *cf. People* v. *Chiuminatta, supra,* 156 Cal.App.2d 169, 172.)[4] His testimony is, however, direct evidence of the fact that the person at the scene of the accident, who was then identified by Price, was identifiable as the defendant. The fact that further evidence is necessary to form the chain does not render the evidence dependent upon an inference or presumption. In other words, the combined testimony of the two witnesses furnishes direct evidence that defendant was the person involved.

Furthermore, the defendant herself testified that at the time of the trial in this case, although not in 1964, she remembered being in the 1957 accident. Her testimony in this case is, of course, direct evidence that the accident happened, and that her testimony in 1964, which she attributes to a "block out" of all that was connected with Pennington, was false. (See *People* v. *Baranov* (1962) 201 Cal.App.2d 52, 57 [19 Cal.Rptr. 866]; and *People* v. *Todd* (1935) 9 Cal.App.2d 237, 242 [49 P.2d 611].) She claims that this testimony cannot be used to independently furnish the direct evidence of the falsity of her testimony because it was elicited after the court erroneously denied her motion for an advisory verdict at the conclusion of the prosecution's case. This argument is predicated upon an analogy to the principles that the use of an improperly obtained extrajudicial statement will not be cured by the fact that the declarant later testifies substantially in accordance with the statement. (*People* v. *Clark* (1965) 62 Cal.2d 870, 881 [44 Cal.Rptr. 784, 402 P.2d 856].) In that case the court observed, "It should first be noted that we are not concerned with the question as to whether these

---

[4]The repeal of section 1832 of the Code of Civil Procedure may leave the way open for consideration of the general rule which is indicated as considering that oral confessions are direct and not circumstantial evidence. (See *People* v. *Koenig* (1946) 29 Cal.2d 87, 91 [173 P.2d 1], but *cf.* Law Revision Com. Comment on repeal of § 1832; 4 Deering's Evid. Code Ann. (1966) p. 421.) It is further noted that there is some suggestion that where, as here, the witness himself has given a written declaration, particularly one under oath, which contradicts the allegedly false testimony, it may serve, when corroborated, to satisfy the statutory requirement. (See *People* v. *Roubus* (1966) 65 Cal.2d 218, 221, fn. 1 [53 Cal.Rptr. 281, 417 P.2d 865]; *People* v. *Maxwell* (1897) 118 Cal. 50, 54 [50 P. 18]; *People* v. *Chiuminatta* (1957) 156 Cal.App.2d 169, 172-173 [318 P.2d 753]; *People* v. *O'Donnell* (1955) 132 Cal.App.2d 840, 847, fn. 5 [283 P.2d 714]; *People* v. *Dixon* (1950) 99 Cal.App.2d 94, 97 [221 P.2d 198]; and *People* v. *Darcy* (1943) 59 Cal.App.2d 342, 347-348 [139 P.2d 118].)

extrajudicial statements were confessions or admissions. In either event, when introduced, their prejudicial effect is obvious. In the People's case in chief they constituted the only evidence connecting these defendants with the crimes charged. This prejudice was not cured by both defendants later taking the stand and testifying to the same facts. This is so because here the prosecution rested after having produced no substantial evidence against either Coulverson or Davis, except that contained in the improperly obtained extrajudicial statements. At that moment, when the prejudice was unquestionable, those defendants moved for advisory verdicts in their favor. If the trial judge had been cognizant, as we are now, that the only evidence against the defendants was improperly introduced, he would have been compelled to grant such motions. Being unaware of the law not yet announced, he denied the motions, and defendants were compelled to proceed with a defense under circumstances wherein they would have otherwise rested. It was only after those combined errors that they took the stand and testified to matters which contained both the exculpatory and incriminatory inferences which also appeared in their previously introduced statements. That testimony was obviously the fruit of the errors, and may not be relied upon as curing the very errors which compelled it (*Fahy* v. *Connecticut*, 375 U.S. 85, 91 [11 L.Ed.2d 171, 175, 84 S.Ct. 229])." (62 Cal.2d at p. 881.)

It is unnecessary to determine the application of *Clark* to the circumstances suggested by defendant. The testimony connecting defendant with the accident was properly admitted and furnished the proof required by law to establish her perjury. The court, therefore, properly denied her motion for an advisory verdict. (*People* v. *Hewlett* (1951) 108 Cal.App. 2d 358, 375-376 [239 P.2d 150]; *People* v. *Grossman* (1938) 28 Cal.App.2d 193, 204 [82 P.2d 76]; *People* v. *Hatfield* (1933) 129 Cal.App. 162, 167-168 [18 P.2d 366].) In any event, under the law as it then existed, the court could only "advise" the jury to acquit. (See Pen. Code, former § 118; and *People* v. *Daniels* (1894) 105 Cal. 262, 265-266 [38 P. 720]; and *cf.* §§ 1118, 1118.1 and 1118.2, as added by Stats. 1967, ch. 256, §§ 1, 2 and 3, p. 1406). Furthermore, the existence of unquestionable direct evidence in support of the other charges in the first count, and in support of all the charges in the second count rendered it improper to advise an acquittal, even if defendant's contentions concerning the admissibility and

sufficiency of the evidence of her participation in the accident were to be accepted. (See *People* v. *Holbrook* (1955) 45 Cal.2d 228, 232-233 [288 P.2d 1].) The defendant's testimony in confession and avoidance was necessitated, not by errors in the admission or evaluation of evidence, but because of the case made out against her.

Finally, defendant contends that there is no evidence to show that she wilfully gave false testimony because her assertion that at the time, 1964, she had erased from her mind all events connected with Pennington was uncontradicted and unchallenged. This contention overlooks all the circumstances which point to and support a contrary inference.

 ''The question of whether the false swearing is the result of an honest mistake or has been committed wilfully, knowingly and corruptly is one of fact for the jury to decide (48 Cor.Jur. 907), and evidently the jury in the present case, as shown by its verdict, did not believe the story told by appellant. Therefore, since the jury is the sole judge of the credibility of the witnesses and the facts of the case, it is beyond the power of the reviewing court to interfere with the conclusions it has reached on this issue.'' (*People* v. *Todd, supra,* 9 Cal.App.2d 237, 244; *accord*: *People* v. *Baranov, supra,* 201 Cal.App.2d 52, 58-59; *People* v. *Barry* (1957) 153 Cal.App.2d 193, 208 [314 P.2d 531] ; *People* v. *Guasti* (1952) 110 Cal.App.2d 456, 464 [243 P.2d 59] ; *People* v. *Dixon* (1950) 99 Cal.App.2d 94, 96-97 [221 P.2d 198] ; *People* v. *Darcy* (1943) 59 Cal.App.2d 342, 348 [139 P.2d 118].)

The evidence is sufficient to sustain the conviction and there was no error in denying the defendant's motion for an advisory verdict.

## *Alleged misconduct of the court*

A. *The court's statements on the degree of proof.*

 The defendant complains about the following incident that took place during the *voir dire* of the jury. Defense counsel asked a prospective juror, ''Now, do you have any personal feeling that causes you to disagree with the law that says that in a perjury case the standard of proof which the District Attorney must meet is greater than that in any other case known in the criminal law, . . . with the sole exception of treason, . . .'' The district attorney objected that he did not believe it was proper to pose such a question to the juror, and that the court would properly instruct on the matter. The

court indicated it did not wish to argue the law at that point, but, after interruption by defendant's attorney, made the following statements: "The only case in which the Appellate Courts have sanctioned an inquiry into an agreement or disagreement with the law is that directing itself to the issue of the death penalty. Otherwise, the Appellate Courts have said that the inquiry should be curtailed to inquiring whether the jurors will follow the law as stated by the court.

"Otherwise, you could go over forty instructions and say, do you agree with this one, would you follow it, do you agree with this one, would you follow this one, and so on, and the Appellate Courts say, we don't like that."

After further interruption by both sides, on the propriety of the question, the judge declared: "I have been sitting on the criminal court for over five years here and this is the first perjury case. I am not prepared to answer that question. I must say the statement shocked me. If the law is that way I will tell the jury at the end of the case, but it shocks me that there should be a greater burden of proof in a perjury case than in armed robbery or assault with intent to kill and mayhem and all the rest of it. If the law says that I will tell the jury that at the end of the case. That's the end of the subject now."

It can be seen from the transcript that the court did not misstate the law to the jury, but rather refused to be entangled in a discussion on the subject, and its further remarks were provoked by counsel. These remarks, however, were not an instruction, but a confession of lack of knowledge on how to instruct, and a foreclosure of further discussion on the matter. Apparently defendant does not object to the court's cutting short his examination on the law, a point on which he cannot succeed (see *People* v. *Love* (1960) 53 Cal.2d 843, 852 [3 Cal.Rptr. 665, 350 P.2d 705], and cases there collected), but grounds his objection on a misinstruction in the law. Again, it must be reiterated, there was no instruction, and even if the judge's remarks were an intemperate expression of opinion, after a discussion in chambers, the judge, in open court, admitted he was following the standard enunciated by defense counsel, although he did not frame it in the terms that defense counsel used. He later instructed the jury accordingly. Thus, it would seem that defendant's objection on this matter cannot be sustained. The subsequent instructions would rectify any impression that would lead to the jury's following an incorrect principle of law.

B. *The court's criticism of defense counsel's objections.*

In *People* v. *Mahoney* (1927) 201 Cal. 618 [258 P. 607], the court considered " 'twenty-three utterances by the trial judge and numerous instances where he took to himself the task of examining witnesses, which appellant says conveyed to the mind of the jury the impression that the judge was convinced of the guilt of the defendant and that his sympathy was wholly with the prosecution.' " (201 Cal. at pp. 621-622.) Among these utterances were those in which the judge termed defense objections "idiotic," without "a scintilla of sense" and "awful trivial." The court, in commenting on the trial judge's conduct, declared: "Such an attitude on the part of a trial court as that here disclosed cannot be passed over so lightly. Jurors rely with great confidence on the fairness of judges, and upon the correctness of their views expressed during trials. For this reason, . . . a judge should be careful not to throw the weight of his judicial position into a case, either for or against the defendant. . . . When, as in .this case, the trial court persists in making discourteous and disparaging remarks to a defendant's counsel and witnesses and utters frequent comment from which the jury may plainly perceive that the testimony of the witnesses is not believed by the judge, and in other ways discredits the cause of the defense, it has transcended so far beyond the pale of judicial fairness as to render a new trial necessary." (*Id.*, pp. 626-627 passim, and pp. 627-628. See also *People* v. *Zammora* (1944) 66 Cal.App.2d 166, 205-211 [152 P.2d 180]; *People* v. *Williams* (1942) 55 Cal.App.2d 696, 703 [131 P.2d 851], and cases collected; Witkin, Cal. Criminal Procedure (1963) §§ 440-442, pp. 440-445.)

Defendant points to the following instance and asks this court to find there was prejudicial misconduct below. "The Court: Well, I am not going to reconsider it, so proceed with your voir dire. I want to get this case moving. It seems to me, and I say it quite timely, that some of your objections are quite far fetched. When the questions relate to a marriage to Pennington she is charged with lying and saying that she doesn't know him, under oath, and you say it's unrelated to the issues. I say that's a far fetched objection, and I would like to move the trial along. Now, you requested voir dire. Proceed with the voir dire. [Defendant's Attorney] : I would ask that the jury be admonished by the Court that the Court's remarks are not to be construed—it should not be construed as any reflection upon the defendant or the defend-

ant's guilt or innocence. The Court: Well, more than that, no remarks of mine are to influence the jury one way or the other as to the credibility of witnesses or the findings of fact which they will make. That's their function. I am just ruling on the law and I don't mean to say anything prejudicial to your client or to you. [Defendant's Attorney]: Thank you. The Court: But I would like to move the case along. I do say that the objection—I will repeat it—in my opinion is far fetched.''

The judge's further comments that he was not being critical of the attorneys in the case at hand, his recognition that when he made a mistake he owed an apology to counsel, his contrite acknowledgment that ''I sound like I am giving you the dickens,'' his statement that he did not want to be rude in speeding up counsel, but he wanted to move the trial along, and his similar conduct toward the district attorney must be recognized as well as the instance above. The entire transcript does not demonstrate unfairness or undue criticism of defense counsel, but a desire to expedite a lengthy and frequently interrupted trial.

C. *The court's review of documents.*

Defendant cites the following passage: ''[Defendant's Attorney]: Well, Your Honor should have this in front of you to read this to see whether there is relevancy or not in it. The Court: You just told me. I read the whole thing. I think it's all relevant.''

From this he argues that it must be assumed that the court read the entire transcript of defendant's 1957 accident case out of counsel's presence, and, that this constituted prejudicial error. Defendant relies on *People* v. *Ramirez* (1952) 113 Cal.App.2d 842 [249 P.2d 307].

The People point out, with some merit, that the entire colloquy of which the above is only a small part, indicated that the court had reference only to the precise questions and answers in issue.

In fact the judge declared: ''Now, Mr. Shaw has indicated by page and line certain portions of the transcript of the trial before Judge Arnold and certain portions of the deposition of the plaintiff in that case, defendant in this case, that he wishes to read to the jury. . . . Now, I have read the entire references therein to the transcript of the trial. Now, you object to all of those?'' Moreover, the judge at one point asked for a copy of the marked transcript, and asked questions on its content which indicated he had not read the entire transcript.

In *People* v. *Ramirez, supra,* 113 Cal.App.2d 842, relied upon by defendant, the judge permitted the prosecuting attorney, without a formal order, after the close of the case for the day, and without notice to the defendant, to secure and have analyzed certain capsules found on the defendant, and then in effect accepted as true the fact that the capsules had never been opened. Of this behavior, the court remarked: "All proceedings in connection therewith were secret. Defendant was not notified and thus given an opportunity to object to such action or to participate therein. Defendant was also denied the right to have another chemist present when the test was made. Also it was prejudicial for the court to remark or, in effect testify, that the capsules had not been opened during the course of the trial." (113 Cal.App.2d at p. 851.) In the instant case, even if it be conceded that the court read the entire record, there was no element of surprise to defendant, no court participation in the prosecution of the case behind its back. Instead, the court may have followed the commendable procedure of reading the file on a case in advance to prepare for any motions, arguments, etc. made by counsel. Moreover, there is nothing in the action if it took place, which was prejudicial to the defendant.

D. *The court's alleged aid to the prosecution.*

Defendant refers to the following comment: "Well, there is no proof absolute that the lady in question who answered the questions on that day and at that place and at that intersection in reference to her identity and a 1955 Buick is the defendant. There is no proof absolute of that. The reason I am admitting the evidence is that a Negro adult female driving a 1955 Buick, which was involved in an accident according to this witness and a prior one with a 1955 Ford station wagon, gave certain answers, and it's stipulated that a suit that was filed alleging that accident was filed by the defendant in this case. So that if the jury wants to infer it's the same lady it may. If it says to say it wasn't, it was somebody else, it may do that too. It's up to the jury." She also complains that the court indicated to the district attorney that defense counsel might argue that the failure to produce the witnesses to the 1957 trial was a fatal flaw in the People's case.

Based on these two instances, the defendant argues that the court's conduct was comparable to the conduct condemned in *Ramirez, supra,* where the court continuously led the prosecuting witness, and pulled "him out of a hole every time,'" (113 Cal.App.2d at pp. 852, 855) and in *Mahoney, supra,*

where the court was accused of espousing the prosecution's cause (201 Cal. at p. 626). A review of the entire record, takes the case out of the purview of *Mahoney* and *Ramirez*. It can be seen that the court did not espouse any cause, but was equally critical of both attorneys and ruled fairly and impartially on counsel's objections.

*Alleged Errors in Instructions*

A. *Instruction that statements were material.*

Defendant argues that the trial court erred in instructing that all the questions that remained in the indictment were material as a matter of law. Defendant recognizes the rule stated in *People* v. *Sagehorn* (1956) 140 Cal.App.2d 138, 153 [294 P.2d 1062], as follows: "It is settled that it is the exclusive right of the trial judge in a criminal action to determine the materiality of the alleged perjured testimony and to instruct the jury thereon. [Citations.]" But defendant alleges that the rule in *Sagehorn* must be modified by the language of *People* v. *Matula* (1959) 52 Cal.2d 591 [342 P.2d 252], that, "We conclude that in the circumstances of this case the giving of the challenged instruction was not prejudicial error. It is frequently said that materiality for perjury purposes is a question of law. (*People* v. *Lem You, supra,* 97 Cal. 227, 228 [32 P. 11]; *People* v. *Sagehorn,* 140 Cal.App.2d 138, 153 [294 P.2d 1062]; *People* v. *Curtis,* 36 Cal.App.2d 306, 319-321 [98 P.2d 228].) But it has also been indicated that it may be a mixed question of fact and law: that the jury's function is to find what happened at the prior proceeding and the court's function is to instruct the jury as to what findings would establish materiality. (*People* v. *Lem You, supra,* 97 Cal. 224, 228-230; *Luse* v. *United States,* 49 F.2d 241, 244-245.) But even assuming that the jury should have been permitted to determine what happened at the legislative hearings, the most that can be said is that the jury was deprived of the opportunity of determining whether the portions of the hearing transcript that were made part of the record in this case were accurate." (52 Cal.2d at p. 600.)

It can be seen from a reading of the *Matula* case, it in no way meant to impinge on the trial court's function to determine what is material, once the jury has found that the statements alleged to be perjured are accurately represented, and were in fact made. In this case it was not denied that defendant testified as charged in 1964. Therefore, defendant's contentions in this regard are without merit.

■ The court first gave an instruction substantially in

the words of CALJIC 763, which had been requested by defendant. It then stated: "Now, in this case I instruct you as a matter of law that the statements made by the defendant in Judge Arnold's Court, which are the subject matter of the charge here, were material." Following this instruction it gave, apparently at the request of the defendant. an instruction based on CALJIC 764, which read: "It is not a defense to a prosecution for perjury that the accused did not know the materiality of the false statement, if any, made by her or that it did not in fact effect the proceeding in or for which it was made. If it was in fact material and might have been used to effect such proceeding, the requirement of the law as to materiality is met." Defendant attempts to construct an apparent inconsistency out of the two quoted instructions. The latter instruction merely explains how a statement, which is material as a matter of law, remains so even if the accused did not appreciate its materiality, or even if the proceedings are dismissed (as was the case here), or otherwise unaffected by the perjury. There is nothing confusing or contradictory in the two instructions.

B. *Instruction on quantum of proof.*

Defendant claims that the court erred in failing to give an instruction in the oft-quoted language from *People* v. *DeMartini, supra,* which reads: "Perjury requires a higher measure of proof than any other crime known to the law, treason alone excepted." (50 Cal.App. at p. 112; and see *People* v. *DiGiacomo, supra,* 193 Cal.App.2d 688, 698.) Suffice it to say she offered no such instruction. She requested and the court gave CALJIC 766[5] which fully covers the situation.

C. *Instruction on direct and circumstantial evidence.*

Defendant complains of the failure of the court to give CALJIC 24 ("Direct and Circumstantial Evidence [defined and] Equally Entitled to Consideration") CALJIC

---

[5]The instruction as given reads: "A conviction of perjury may not be based upon the uncorroborated testimony of a single witness or upon evidence which is wholly circumstantial. Perjury must be proved by the testimony of two witnesses or of one witness and corroborating circumstances; and while the alleged perjured statement need not be denied in its exact words, there must be positive testimony by at least one witness of facts that are absolutely incompatible or physically inconsistent with the alleged perjured statement of the accused.

"Corroborative evidence is additional evidence to the same point, and although, standing alone, it need not be sufficient to support a conviction, it must do more than cast a [mere] suspicion upon the accused. It must, in and of itself and independent of the evidence which it supports, tend to prove the commission of the offense and must tend with a reasonable degree of certitude to show that the accused is guilty as charged."

27. ("Test of Sufficiency [of Circumstantial Evidence]"), and CALJIC 28 ("Each Essential Fact must be proved [in chain of Circumstantial Evidence]"). None of these instructions was requested by her. She requested CALJIC 26 ("Evidence Susceptible of Different Construction") and it was given in substance.

Defendant's complaint fails to recognize that in elaborating on the requirements of section 1103a of the Penal Code "the courts have referred interchangeably to 'direct' evidence and 'positive' evidence in contradistinction to 'indirect' evidence and 'circumstantial' evidence. [Citations.]" (*People* v. *DiGiacomo, supra,* 193 Cal.App.2d 688, 693.) The instruction requested by defendant and given by the court (see fn. 5, *supra*) adequately covers the applicable law in reference to the quantity and quality of proof required in terms of "positive testimony." (See *People* v. *Roubus, supra,* 65 Cal.2d 218, 221; and *People* v. *DiGiacomo, supra,* 193 Cal.App.2d 688, 693.) The language in CALJIC 24 and 27, which recognizes the conditions under which a conviction may be predicated upon circumstantial evidence alone, conflicts with the approved instruction on perjury, and it has been held error to instruct in those terms in a perjury case. (*People* v. *DiGiacomo, supra,* pp. 698-699.) The same shortcoming applies to CALJIC 28.

D. *Instruction to specifically designate questions found answered falsely.*

Defendant's complaint that the verdicts did not require the jury to designate which of the several questions in each count the jury found were falsely answered, founders for want of a request for such a special verdict.

The court did give the following instruction: "When the information charges in the same count that the defendant made more than one perjured statement, the proof need show that he made only one of such statements to support a conviction, provided that as to that one statement the proof is adequate under the law and shows that every essential element of the crime of perjury was present in the making of such statement." (See CALJIC 765; *People* v. *Mizer* (1940) 37 Cal.App.2d 148, 154 [99 P.2d 333]; and *People* v. *Follette, supra,* 74 Cal.App. 178, 191.) It rejected the same instruction as proposed by the defendant with a modification which added the following language: "[A]nd the twelve of you must individually agree as to the particular statement." Caution would dictate that where numerous statements are set forth in

one count such a modification or a separate instruction (see CALJIC 111 (rev.)) be given. No prejudice can be shown in this case by the rejection of the proposed modification. The defendant was found guilty ''as charged,'' which implies that all jurors agreed as to all of the specific questions. (See *People* v. *Mizer, supra,* 37 Cal.App.2d 148, 152-153.) In any event, there was no substantial issue as to the falsity of each and every statement. The substance of defendant's case was confession and avoidance, and, as noted, the jury failed to accept her explanation.

The judgment and order are affirmed.

Molinari, P. J., and Elkington, J., concurred.